DECISION AND JOURNAL ENTRY
{¶ 1} Appellants/Cross-Appellees Danielle and Douglas Bimber and Appellee/Cross-Appellant Jennifer Rice have appealed from a judgment of the Summit County Court of Common Pleas that found the existence of two parent-child relationships and declined to address the issue of a third parent-child relationship. This Court affirms in part and reverses in part.
 I {¶ 2} The history of the instant matter is unique and complex. Accordingly, this Court is compelled to provide a brief account of the underlying facts before reviewing the case.
 {¶ 3} Appellee James O. Flynn ("Flynn"), Appellee/Cross-Appellant Jennifer Rice ("Rice"), and Appellant/Cross-Appellee Danielle Bimber ("Bimber") entered into a surrogacy contract whereby Bimber would serve as a surrogate mother for Flynn and Rice's children. Flynn, a resident of Ohio, was not involved in a romantic relationship with Rice, a resident of Texas, or Bimber, a resident of Pennsylvania; both women were contacted through a surrogacy agency and compensated by Flynn. Sperm was collected from Flynn and used to fertilize eggs collected from Rice, which created embryos that were inseminated in Bimber at University Hospital in Cleveland, Ohio. As a result of the in vitro fertilization, Bimber became pregnant and gave birth to triplets. The parentage, possession, and custody of the triplets have been contested since their births.
 {¶ 4} On December 11, 2003, Flynn filed a complaint in Pennsylvania Orphans' Court for sole custody of the triplets. The court granted Bimber temporary custody. Bimber then filed a counterclaim for custody. On April 2, 2004, the Pennsylvania court addressed the issue of "whether a gestational surrogate like [Bimber] ha[d] standing to pursue a custody action against a biological parent like [Flynn]." The court referred to Flynn as the biological father and found that Rice was not a party to the action before it; as such, it declined to address whether Rice could be found the legal mother of the triplets. The court declared the surrogacy contract entered into by Bimber, Flynn, and Rice void "as against public policy because [the contract did] not provide for a legal mother for the triplets and it allow[ed] the parties to bargain away the children's custody and support rights." The court continued that "[s]ince the contract is void because it does not provide for a legal mother, the Court finds [Bimber] to be the legal mother of the triplets since she carried and bore them and has taken care of them as a natural parent would." As the legal mother of the triplets, the court found that Bimber had automatic standing and that she had standing in loco parentis to pursue both custody and child support for the triplets.
 {¶ 5} On April 22, 2004, Rice filed a complaint pursuant to R.C. Chapter 3115 in the Summit County Court of Common Pleas, Domestic Relations Division, seeking the determination of the existence of a mother-child relationship between herself and the triplets. The basis for the complaint was that Rice was the biological mother of the triplets. Rice also requested the court find that Bimber and her husband, Douglas Bimber ("the Bimbers"), were not the parents of the triplets and that they had no parental rights with respect to the children.
 {¶ 6} On May 17, 2004, the Pennsylvania court issued an order stating that Flynn and Bimber shared legal and physical custody of the triplets and established a schedule of possession and visitation.
 {¶ 7} On June 4, 2004, Flynn filed an answer to Rice's complaint in the court below admitting all the allegations contained therein. He also filed a counterclaim and cross-claim. Flynn reiterated the factual allegations made by Rice and requested the court determine the existence of a father-child relationship between himself and the triplets based upon the grounds that he is the biological father of the children. He also requested that the court find that the Bimbers were not the parents of the triplets and that they had no parental rights with respect to the children.
 {¶ 8} Rice answered Flynn's cross-claim and admitted the allegations contained therein. Rice reiterated Flynn's request that the trial court find a father-child relationship between Flynn and the triplets and that the court find that the Bimbers were not the parents of the triplets and that they had no parental rights with respect to the children.
 {¶ 9} On June 14, 2004, Bimber answered Rice's complaint. Bimber admitted that: 1) Flynn was the biological father of the triplets; 2) pursuant to a surrogacy contract she agreed to act as a gestational surrogate for a fee, whereby she was impregnated with an egg from Rice and sperm from Flynn; and 3) Douglas Bimber is her husband. Bimber admitted that Flynn's sperm was used in the in vitro fertilization process. Bimber admitted that the embryos implanted in her did not contain her or her husband's genetic material. Bimber stated that she was without sufficient information to admit or deny whether Rice was the biological mother of the triplets or whether the embryos implanted in her contained Rice's eggs. Bimber requested that the court find that no mother-child relationship existed between Rice and the triplets and that a mother-child relationship did exist between Bimber and the triplets.
 {¶ 10} Pursuant to a motion for DNA testing, DNA tests were conducted and the tests found a 99.98-99.99% probability that Rice and Flynn were the biological parents of the triplets.
 {¶ 11} On September 16, 2004, Rice filed a motion for summary judgment. In her motion, Rice argued that the DNA test results established by clear and convincing evidence that Rice was the mother of the triplets and that Bimber was not the mother of the children. Rice argued that based on the DNA results, the court should enter judgment that Bimber was not the mother of the triplets.
 {¶ 12} Bimber responded in opposition to Rice's motion and filed her own motion for summary judgment. Bimber argued that Ohio did not have jurisdiction to enter a parenting determination because Pennsylvania had already made a parenting determination and Ohio was required to give full faith and credit to said decision. Bimber argued that the Uniform Child Custody Jurisdiction Act ("UCCJA") and the Parental Kidnapping Prevention Act ("PKPA") prohibited Ohio from making a parenting determination because Pennsylvania had already issued an initial custody/parenting decree. Bimber requested the court dismiss Rice's claim and Flynn's cross-claim.
 {¶ 13} On October 5, 2004, Flynn filed a motion for summary judgment. He restated and incorporated by reference the facts, legal standards, and arguments set forth in Rice's motion for summary judgment. Flynn argued that it was established by clear and convincing evidence that he was the father of the triplets; that Bimber does not share a parent-child relationship with the triplets; and that Bimber acknowledged him as the father of the children. He requested that the court enter judgment that Bimber was not the mother of the children; Bimber's husband was not the father of the children; and that he, Flynn, was the father of the children.
 {¶ 14} The Bimbers filed a motion in opposition to Flynn's motion for summary judgment. The motion restated and incorporated by reference the arguments presented in their motion in opposition to Rice's motion for summary judgment. The Bimbers asked the court to dismiss Flynn's motion for summary judgment.
 {¶ 15} On October 13, 2004, Rice responded to Bimber's motion. Rice argued that Bimber failed her burden under Civ.R. 56(E) because she failed to present any facts demonstrating that Rice was not entitled to judgment as a matter of law. Rice also asserted that Bimber did not object to the DNA test results and she did not address them in her motion in opposition. She argued that contrary to Bimber's argument, R.C. 3109.22
was not applicable to the instant matter because custody was not at issue; rather, the issue before the court was whether a parent-child relationship existed between Rice and the triplets.
 {¶ 16} On October 29, 2004, the trial court issued its decision concerning Rice, Flynn, and Bimber's motions for summary judgment. The trial court found the record established the following facts: Flynn and Bimber entered into a surrogacy contract whereby Bimber agreed to be the surrogate mother for embryos created with Flynn's sperm and Rice's eggs; the procedure resulted in Bimber's pregnancy and she gave birth to triplets; the triplets live in Pennsylvania and were under the jurisdiction of that state; and genetic testing of Rice, Flynn, and the triplets established a 99.00% probability that Rice and Flynn are the genetic parents of the triplets.
 {¶ 17} The court found that it had jurisdiction over claims to establish a parent-child relationship in the instant matter. To resolve the pending issues, the court employed a two-part test established inBelsito v. Clark (1994), 67 Ohio Misc.2d 54. The court determined that the first prong of the test determines whether a parent/child relationship exists and the second prong, which reviews whether the genetic parents have waived their rights to be the legal parents, requires a court to make a parenting determination. Id. at 66. The court found that the Pennsylvania court had continuing exclusive jurisdiction over the triplets with respect to making a parenting determination.
 {¶ 18} The court's decision and order contained the following pronouncements:
"1. A parent-child relationship exists between [Rice] and the triplets and between [Flynn] and the triplets.
"2. The Court of Common Pleas of Erie County, Pennsylvania has exclusive jurisdiction over the parenting determination with respect to the triplets.
"3. [Rice's] Motion for Summary Judgment is granted with respect to the claim in the complaint for a determination of the existence of a parent-child relationship between [Rice] and the triplets.
"4. [Rice's] Motion for Summary Judgment with respect to a parenting determination concerning the rights of [Rice], [Flynn], and [Bimber] is denied.
"5. [Flynn's] Motion for a Summary Judgment is granted with respect to the determination of the existence of a parent-child relationship between [Flynn] and the triplets.
"6. [Flynn's] Motion for Summary Judgment with respect to a parenting determination concerning the rights of [Rice, Flynn, and Bimber] is denied.
"7. The Bimber['s] Motion for Summary Judgment with respect to the alleged non-existence of a parent-child relationship between [Rice] and the triplets is denied.
"8. The Court does not have jurisdiction to rule on the existence of a parent-child relationship between [Bimber] and the triplets because this issue is subject to the continuing exclusive jurisdiction of the Pennsylvania Court."
 {¶ 19} The Bimbers have timely appealed from the trial court's decision, asserting two assignments of error. Rice has filed a cross appeal, asserting one assignment of error. For ease of discussion, we first address Rice's cross-assignment of error; however, before reaching the merits of the instant appeal several issues must be addressed.
 II Final, Appealable Order
 {¶ 20} The Ohio Constitution limits an appellate court's jurisdiction to the review of final judgments of lower courts. Section 3(B)(2), Article IV. Accordingly, this Court has jurisdiction to review only final and appealable orders. See Harkai v. Scherba Industries., Inc. (2000),136 Ohio App.3d 211, 219. "For a judgment to be final and appealable, the requirements of R.C. 2505.02 and Civ.R. 54(B), if applicable, must be satisfied." (Citation omitted.) Konstand v.Barberton, 9th Dist. No. 21651, 2003-Ohio-7187, at ¶ 4. The primary function of a final, appealable order is the termination of a case or controversy. Perrine v. Perrine, 9th Dist. No. 20923, 2002-Ohio-4251, at ¶ 7.
 {¶ 21} After a thorough review of the record, we find that the trial court's October 29, 2004 journal entry is a final, appealable order. The journal entry satisfies R.C. 2505.02 because it affects a substantial right and it contains the appropriate Civ.R. 54(B) language of "no just cause for delay." The trial court terminated the case below and contrary to Bimber's claim, "Civ.R. 58 does not require a judge to enter judgment on a document separate from a decision of the court." (Emphasis added.)L.T.M. Builders Co. v. Jefferson (1980), 61 Ohio St.2d 91, syllabus. Based on the foregoing, we find that the trial court's "Judgment Entry" was a final, appealable order.
Mootness
 {¶ 22} In a journal entry filed on June 21, 2005, well after the decision of the trial court below, a Pennsylvania court terminated Rice's parental rights to the triplets. Bimber has argued that said termination makes Rice's request for a determination of parentage moot. We disagree.
 {¶ 23} "Actions or opinions are described as `moot' when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual, genuine, live controversy, the decision of which can definitely affect existing legal relations." (Citations omitted.) Culver v. Warren
(1948), 84 Ohio App. 373, 393. An issue or question can be found moot due to a new fact or change in the circumstances of a case. See State exrel. Ryant Commt. v. Lorain Cty. Bd. of Elections (1999), 86 Ohio St.3d 107
(appeal dealing with placing a name on a ballot that could not be decided before the election is moot); Poulson v. Wooster City Planning Comm., 9th Dist. No. 04CA0077, 2005-Ohio-2976 (appeal involving construction of a building was moot when the construction commenced without the appellant obtaining a stay).
 {¶ 24} Bimber has argued that the June 21, 2005 Pennsylvania journal entry terminating Rice's parental rights has made the instant appeal moot. While "an event that causes a case to be moot may be proved by extrinsic evidence outside the record [,]" Pewitt v. Lorain CorrectionalInst. (1992), 64 Ohio St.3d 470, 472, the June 21, 2005 Pennsylvania journal entry does not make this appeal moot.
 {¶ 25} The most recent Pennsylvania decision did not kill the controversies between the parties; an actual, genuine, live controversy remains regarding the parentage and parenting of the triplets. Because said decision is appealable it may be reversed or amended; accordingly, it is not dead. Moreover, said journal entry was an opinion, not a new fact or change of circumstances that would make an issue moot. Based on the foregoing, this Court can reach the merits of the instant appeal.
Effect of June 21, 2005 Pennsylvania Decision on the Instant Appeal
 {¶ 26} Pursuant to App.R. 9(A), the record on appeal consists of "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, * * *, and a certified copy of the docket and journal entries prepared by the clerk of the trial court[.]" As previously discussed, the June 21, 2005 Pennsylvania decision was issued several months after the trial court's decision that is currently before this Court. Accordingly, the trial court below did not have that Pennsylvania decision before it and it is not part of the record on appeal. Therefore, this Court will not consider the June 21, 2005 Pennsylvania decision in our review of the instant appeal.
 Cross-Assignment of Error Number One
"THE TRIAL COURT ERRED IN GIVING FULL FAITH AND CREDIT TO THE PENNSYLVANIA CUSTODY DECREE."
 {¶ 27} In her sole cross-assignment of error, Rice has argued that the trial court erred when it ruled that it lacked jurisdiction to review the Bimbers' rights with regard to the triplets. Specifically, Rice has argued that the trial court was not bound to give full faith and credit to the Pennsylvania court's decision because it did not comply with the jurisdictional requirements of giving notice and an opportunity to be heard. We agree.
 {¶ 28} The decision to give full faith and credit to another state's court decisions is a legal question. This Court reviews legal questions under the de novo standard of review. Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. A de novo review requires an independent review of the lower court's decision without deference to that court's decision. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711.
 {¶ 29} Pursuant to the PKPA, 28 U.S.C. 1738A, which Bimber cites in her brief and is labeled "Full faith and credit given to child custody determinations [,]" "[t]he appropriate authorities of every State shall enforce according to its terms * * * any custody determination * * * made consistently with the provisions of this section by a court of another State." 28 U.S.C. 1738A (a). The statute mandates that "[b]efore a child custody or visitation determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child." 28 U.S.C. 1738A(e). Contestant "means a person, including a parent or grandparent, who claims a right to custody or visitation of a child [.]" 28 U.S.C. 1738A (b)(2).
 {¶ 30} Pennsylvania has a similar notice provision. "Before a child custody determination is made * * * notice and opportunity to be heard * * * must be given to all persons entitled to notice under the laws of [Pennsylvania] as in child custody proceedings between residents of [Pennsylvania], any parent whose parental rights have not been previously terminated and any person having physical custody of the child." 23 Pa. C.S. 5425(a). Ohio maintains a similar statute that requires that a court, before making a parenting decree, "give reasonable notice of the parenting proceeding and opportunity to be heard to [a parent of a child or a person who claims a right to custody or visitation or] any parent whose parental rights previously have not been terminated [.]" R.C.3109.23(A).
 {¶ 31} It is undisputed that at the time of the April 2, 2004 Pennsylvania decision that found Bimber the legal mother of the triplets, Rice's parental rights as the genetic/biological mother had not been previously terminated. Accordingly, pursuant to federal and Pennsylvania law, Rice was entitled to notice and an opportunity to be heard on the issue before the Pennsylvania court. Further, under28 U.S.C. 1738A, full faith and credit is due only if the statute is followed. It is clear from the record below that Rice was not afforded the required notice or the opportunity to be heard.[1] The judgment from Pennsylvania made clear that Rice was not a party to the action and that the judge did not consider her relevant to the proceedings.[2]
 {¶ 32} We find that as the genetic/biological mother, in a proceeding where the surrogacy contract was found void, Rice should have been notified and provided an opportunity to be heard by the Pennsylvania court. After finding the surrogacy contract void, the Pennsylvania court could not ignore the rights of the Rice. It was undisputed that Bimber did not have any genetic connection to the triplets. It appears the Pennsylvania court's opinion was inconsistent; the court refused to honor the surrogacy contract, but did not allow Rice any rights because she was just the egg donor and was not "consider[ed] * * * to be a party" to the matter determining the parentage and parenting of the triplets. We find that the Pennsylvania court's failure to properly notify Rice and allow her to participate in the proceedings allows Ohio courts to decline to give full faith and credit to the April 2, 2004 Pennsylvania journal entry. As such, the Ohio courts are not bound by the April 2, 2004 Pennsylvania decision. Accordingly, the trial court must determine under R.C. 3109.22 if it can address the issues denied in Rice and Flynn's summary judgment motions; what relationship, if any, Bimber has with the triplets; and the parental rights of the Bimbers.[3]
 {¶ 33} Pursuant to the UCCJA, codified at R.C. 3109.22:
"(A) No court of this state has jurisdiction to make a parenting determination relative to a child shall exercise that jurisdiction unless one of the following applies:
"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a parent who claims a right to be the residential parent and legal custodian of a child or by any other person claiming his custody or is absent from this state for other reasons, and a parent or person acting as parent continues to live in this state;
"(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
"(3) The child is physically present in this state and either has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;
"(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with division (A)(1), (2), or (3) of this section, or a court in another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to make a parenting determination relative to the child, and it is in the best interest of the child that this court assume jurisdiction."
While more than one state can have jurisdiction under R.C. 3109.21 et seq., in order to maintain exclusive jurisdiction a state must also comply with the PKPA. Justis v. Justis (1998), 81 Ohio St.3d 312, 317.
 {¶ 34} Based on the foregoing, the trial court below must apply R.C.3109.22 in its review of the existence of a parent child relationship between the Bimbers and the triplets. Further, Pennsylvania does not have exclusive jurisdiction over parenting determinations involving the triplets. Rice's sole cross-assignment of error has merit.
 Assignment of Error Number One
"THE TRIAL COURT RECOGNIZED THAT THE PENNSYLVANIA COURT HAS CONTINUING, EXCLUSIVE JURISDICTION REGARDING PARENTAGE OVER THE TRIPLETS. THE COURT ERRED BY FINDING THAT IT HAD JURISDICTION TO DETERMINE THE EXISTENCE OF A PARENT-CHILD RELATIONSHIP BETWEEN [RICE] AND THE TRIPLETS, AND [FLYNN] AND THE TRIPLETS."
 {¶ 35} In their first assignment of error, the Bimbers have argued that the trial court did not meet the jurisdictional requirements for making a parenting determination under R.C. 3109.22. Specifically, the Bimbers have argued that because Pennsylvania is the initial state that rendered the custody determination and retains jurisdiction, the trial court below did not have jurisdiction to grant partial summary judgment to Rice and Flynn. We disagree.
 {¶ 36} The Bimbers have erred in their characterization of the trial court's decision. The trial court did not make a parenting determination. Pursuant to R.C. 3109.21(B), parenting determination "means a court decision and court orders and instructions that, in relation to the parents of a child, allocates parental rights and responsibilities for the care of the child[.]" The trial court below specifically declined to make a parenting determination; rather it made a parentage determination. The trial court found Rice and Flynn to have parent-child relationships with the triplets; it did not allocate any parental rights and responsibilities for the triplets. Accordingly, the Bimbers' argument that the trial court lacked jurisdiction to make a parenting determination under R.C. 3109.22 is not ripe for review because the trial court did not make a parenting determination.
 {¶ 37} Based on the foregoing, Bimbers' first assignment of error lacks merit.
 Assignment of Error Number Two
"DETERMINING THE PARENT-CHILD RELATIONSHIP REQUIRES A TWO-STEP PROCESS BY FIRST IDENTIFYING THE GENETIC PARENTS AND SECOND, BY DETERMINING WHETHER THE GENETIC PARENTS HAVE WAIVED THEIR RIGHTS. THE TRIAL COURT ERRED BY NOT CONDUCTING THE SECOND PART OF THE TWO-PART TEST IN DETERMINING WHETHER OR NOT THE GENETIC PARENTS HAVE WAIVED THEIR RIGHTS."
 {¶ 38} In their second assignment of error, the Bimbers have argued that summary judgment was improper because the trial court erred by failing to complete the two-part test to determine the natural parents of children born pursuant to a surrogacy agreement. Specifically, the Bimbers have argued that the trial court failed to consider whether the genetic parents relinquished or waived their rights to assume the legal status of natural parents. We agree.
 {¶ 39} As previously discussed, the Bimbers' appeal stems from the trial court's resolution of three motions for summary judgment. Typically, an appeal from summary judgment is factually based. In the case sub judice, the Bimbers' second assignment of error is based on an alleged misapplication of case law. The Bimbers are not disputing the facts; rather they are citing error in the alleged incomplete analysis of the trial court. As such, we will review the trial court's decision for any misapplication of case law. As previously discussed questions of law are reviewed under the de novo standard of review. Nationwide,73 Ohio St.3d at 108.
 {¶ 40} In Belsito, a Summit County Court of Common Pleas court found that genetics should remain the primary test for determining the natural parent or parents in nongenetic-providing surrogacy cases. Belsito,67 Ohio Misc.2d at 64. The court also found that genetics cannot be the only basis for determining natural parentage because a natural parent can relinquish or consent to give up their rights and duties of parentage. Id. at 65. Specifically, the court found that:
"when a child is delivered by a gestational surrogate who has been impregnated through the process of in vitro fertilization, the natural parents of the child shall be identified by a determination as to which individuals have provided the genetic imprint for that child. If the individuals who have been identified as the genetic parents have not relinquished or waived their rights to assume the legal status of natural parents they shall be considered the natural and legal parents of that child." Id. at 66.
 {¶ 41} Under the Belsito test, a court first determines genetics and then determines if the genetic parents waived or relinquished parental rights. In the case sub judice, Rice and Flynn have been found to be the genetic parents, but no finding has been made as to whether either one of them waived or relinquished parental rights. Accordingly, a hearing must be held to address the second prong of the Belsito test.
 {¶ 42} Based on the foregoing, we find that the trial court properly found Rice and Flynn to be the genetic parents of the triplets, but it erred in not completing the second portion of the Belsito test. The trial court should conduct a hearing to determine if Rice and/or Flynn waived or relinquished their parental rights. Bimbers' second assignment of error has merit.
 III {¶ 43} Rice's sole cross-assignment of error is sustained. The Bimbers' first assignment of error is overruled and their second assignment of error is sustained. The decision of the trial court is reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Batchelder, J. concurs
[1] Bimber cites to Rice's deposition from February 27, 2005 to support her claim that Rice had notice, but said deposition was taken after the trial court's decision and thus was not part of the trial court's record and cannot be reviewed by this Court. See App.R 9.
[2] In a footnote, the Pennsylvania judge stated that Rice had already declined to be involved, but he did not state that she received notice, how she declined to be involved, or the basis for his statement. As such, this Court declines to assume Rice was properly notified when the record before us demonstrates otherwise.
[3] We note that R.C. 3109.21 and 3109.22 were repealed and renumbered effective April 11, 2005. However, R.C. Chapter 3127 specifically provides that any motions or requests for relief made before the effective date of the new revisions is governed by the law in effect when the motion or request was made. R.C. 3127.53. Because the motions in this case were filed prior to the effective date of the revision, we apply the then-existing version of the UCCJA throughout our opinion.