OPINION
{¶ 1} The defendant-appellant, Dallas McKinley ("McKinley"), appeals the judgment of the Logan County Common Pleas Court finding him guilty of domestic violence and sentencing him to five years of community control sanctions.
 {¶ 2} On January 11, 2005, the Logan County Grand Jury indicted McKinley on one count of domestic violence, a violation of R.C. 2919.25(A), a third degree felony.[1] The indictment was the result of a physical altercation between McKinley and his girlfriend, Cynthia Carpenter ("Carpenter"). During an argument on December 11, 2004, McKinley pushed Carpenter, threw objects at her, and hit her, causing several large bruises. When Carpenter was able to leave the house, she called the police. McKinley admitted to reporting officers that he had consumed four 40-ounce bottles of beer and "this stuff happens when he drinks." At the time of the altercation, Carpenter was living with McKinley in his residence.
 {¶ 3} On February 23, 2005, McKinley pled guilty to an amended charge of domestic violence, a fourth degree felony. The court held a sentencing hearing on March 30, 2005; however, at that time, McKinley made an oral motion to withdraw his guilty plea, which the trial court granted. On April 8, 2005, McKinley filed a motion to dismiss the indictment alleging that the Defense of Marriage Amendment[2] to the Ohio Constitution renders the criminal domestic violence statute unconstitutional. The trial court overruled McKinley's motion.
 {¶ 4} On May 16, 2005, McKinley entered a plea of no contest at a change of plea hearing. On June 6, 2005, the trial court sentenced McKinley to five years of community control sanctions, including six months in a community based correctional facility. This appeal followed, and McKinley asserts the following assignment of error:
The trial court erred as a matter of law when it deniedDefendant's motion to dismiss his indictment for domesticviolence based on the unconstitutionality of Ohio Revised CodeSection 2919.25(A)(1) as a result of the passage of OhioConstitutional Amendment Article XV, Section 11.
 {¶ 5} This matter is properly before us for determination. Under Crim.R. 12, a defendant may "raise by motion any defense . . . that is capable of determination without the trial of the general issue. The following must be raised before trial . . . [d]efenses and objections based on defects in the indictment, information, or complaint[.]" Crim.R. 12(C)(2). In this case, after the trial court granted McKinley's motion to withdraw his guilty plea, he filed a motion to dismiss the indictment, alleging that R.C. 2919.25 is unconstitutional. Although the trial court overruled the motion to dismiss, and although McKinley pled no contest[3] to the offense as charged, McKinley was not precluded "from asserting on appeal that the trial court prejudicially erred in ruling on [the] pretrial motion[.]" Crim.R. 12(I).
 {¶ 6} Crim. R. 12 also requires a defendant to file pretrial motions "within thirty-five days after arraignment or seven days before trial, whichever is earlier" unless the trial court extends the time. Crim.R. 12(D). In this case, the trial court granted McKinley additional time in which to file his motion. Hearing Tr., Aug. 29, 2005, 17-18. As a final matter, our jurisdiction is not defeated by McKinley's failure to serve the Ohio Attorney General because he has not requested a declaratory judgment. See generally R.C. 2721.12; Cleveland Bar Assn. v.Picklo, 96 Ohio St. 3d 195, 2002-Ohio-3995, 772 N.E.2d 1187. Therefore, this matter is properly before us for determination.
 {¶ 7} The constitutionality of a statute is a matter of law, and questions of law are reviewed de novo. Akron v. Callaway,
9th Dist. No. 22018, 2005-Ohio-4095, at ¶ 23 (citations omitted). Under the de novo standard of review, an appellate court conducts in independent review, giving no deference to the trial court's determination. State v. Thymes, 9th Dist. No. 22480, 2005-Ohio-5505, at ¶ 22 (citation omitted). Appellate courts are required to presume the constitutionality of a statute. Desenco, Inc. v. Akron, 84 Ohio St. 3d 535, 538,1999-Ohio-368, 706 N.E.2d 323 (citation omitted). If possible, all reasonable doubts must be resolved in favor of the statute. Id. (citation omitted). Therefore, appellate courts must liberally construe statutes, and before a statute may be declared unconstitutional, "`"it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."'" Id. (quotations omitted).
 {¶ 8} McKinley was convicted of violating R.C. 2919.25, domestic violence. The statute states in pertinent part: "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(A) (emphasis added). The statute defines "family or household member" in pertinent part as:
(a) Any of the following who is residing or has resided withthe offender:
 (b) A spouse, a person living as a spouse, or a formerspouse of the offender; . . .
 (c) "Person living as a spouse" means a person who is livingor has lived with the offender in a common law maritalrelationship, who otherwise is cohabiting with the offender,or who otherwise has cohabited with the offender within fiveyears prior to the date of the alleged commission of the act inquestion.
R.C. 2919.25(F)(1)-(2) (emphasis added). In this case, the parties concede that McKinley and Carpenter are not, and were never, married. The parties also agree that McKinley and Carpenter are not living in a common law marriage. Therefore, they were cohabiting at the time of the offense.
 {¶ 9} On November 2, 2004, the voters of the State of Ohio approved the Defense of Marriage Amendment to the Ohio Constitution. The amendment defines marriage in Ohio and states:
[o]nly a union between one man and one woman may be a marriagevalid in or recognized by this state and its politicalsubdivisions. This state and its political subdivisions shallnot create or recognize a legal status for relationships ofunmarried individuals that intends to approximate the design,qualities, significance or effect of marriage.
Section 11, Article XV, Ohio Constitution (emphasis added). The Defense of Marriage Amendment became effective on December 2, 2004. McKinley challenges R.C. 2919.25 in light of the Defense of Marriage Amendment. In his brief, McKinley contends that R.C.2919.25 and State v. Williams, 79 Ohio St.3d 459. 1997-Ohio-79,683 N.E.2d 1126, have created "a legal relationship between unmarried individuals [who] are cohabiting", which is contrary to the Defense of Marriage Amendment. Therefore, McKinley argues that the "[a]mendment clearly does away with any law that would confer [a] legal status on a relationship that approximates the design, qualities, significance or effect of marriage and as such the Defendant respectfully requests that the court" find "R.C.2919.25(A)(1) as it applies to unmarried persons living as a spouse unconstitutional."
 {¶ 10} The State of Ohio ("State") contends that the statute is constitutional despite the Defense of Marriage Amendment. The State argues that R.C. 2919.25 "defines a class of protected persons who are more susceptible to repeated abuses by an offender[.]" The State argues that the statute does not grant any legal status because it does not confer any new benefits or privileges; rather, the term "`[p]erson living as a spouse' is merely a descriptive phrase intended to protect unmarried co-habitants whose relationship, not legal status, increases the risk for abuse."
 {¶ 11} The first step of our analysis requires us to determine whether McKinley is challenging the statute on its face or as applied to a particular set of facts. Yajnik v. AkronDept. of Health, Housing Div., 101 Ohio St. 3d 106,2004-Ohio-357, 802 N.E.2d 632, at ¶ 14 (citation omitted).
In an "as applied" challenge, the party challenging theconstitutionality of the statute contends that the "applicationof the statute in the particular context in which he has acted,or in which he proposes to act, would be unconstitutional. Thepractical effect of holding a statute unconstitutional `asapplied' is to prevent its future application in a similarcontext, but not to render it utterly inoperative."
Id. (quotation omitted). On the other hand, a facial challenge is the most difficult to prove because "`the challenger must establish that no set of circumstances exists under which the [statute] would be valid. The fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.'" Holeton v. CrouseCartage Co., 92 Ohio St. 3d 115, 140, 2001-Ohio-109,748 N.E.2d 1111 (Cook, J. dissenting) (quotation omitted). In this case, McKinley's argument amounts to an as-applied challenge because he only challenges that portion of the statute relating to unmarried, heterosexual cohabitants who have not parented any children together.
 {¶ 12} Effective on May 7, 2004, the General Assembly enacted several revisions to R.C. 3101.01, which defines who may marry. The General Assembly amended the statute to reflect that "marriage may only be entered into by one man and one woman." R.C. 3101.01(A). This change prohibits polygamy and same-sex marriages. See Section 11, Art. XV of the Ohio Constitution, at Staff Notes. The General Assembly also precluded same-sex marriages performed in other states from having any legal force, effect, or recognition in Ohio. R.C. 3101.01(C)(2). Lastly, the General Assembly amended the statute to read in pertinent part:
[t]he recognition or extension by the state of the specificstatutory benefits of a legal marriage to nonmaritalrelationships between persons of the same sex or differentsexes is against the strong public policy of this state. Anypublic act, record, or judicial proceeding of this state . . .that extends the specific statutory benefits of legal marriage tononmarital relationships between persons of the same sex ordifferent sexes is void ab initio.
Id. at (C)(3) (emphasis added). This final section was specifically intended to prevent the extension of a government employee's benefits to a person cohabiting with the employee, but the broad intent was to prevent "benefits for marriage partners [from being conferred] upon individuals cohabiting out of wedlock, whatever their gender." Section 11, Art. XV of the Ohio Constitution, at Staff Notes (emphasis added). The General Assembly also passed "uncodified law", which refuses to recognize substitutes for marriage, such as a civil union. Id. To prevent the courts from determining that R.C. 3101.01 violates the equal protection clause, the Defense of Marriage Amendment was placed on the November 2004 ballot. Id. Ohio voters approved the new amendment, which became effective on December 2, 2004.
 {¶ 13} If this case required us to interpret the Defense of Marriage Amendment only, we would be bound to interpret it broadly in order to accomplish its manifest purpose. See Statev. Smith, 80 Ohio St.3d 89, 104, 1997-Ohio-355, 684 N.E.2d 668
(quoting State, ex rel. Swetland v. Kinney (1982),69 Ohio St.2d 567, 570, 433 N.E.2d 217). However, this case requires us to interpret a state statute also, and in so doing, we may not consider the voters' intent in enacting the constitutional amendment. Instead, our consideration is limited to the effect of the amendment on the statute before us, R.C. 2919.25. The first sentence of the Defense of Marriage Amendment is clear and unambiguous in defining marriage as "a union between one man and one woman[.]" The second sentence of the amendment is also clear and unambiguous and is at the heart of the problem in this case. The issues presented by this case are whether cohabitation approximates marriage and whether R.C. 2919.25 creates or recognizes a legal status for cohabitants. For the reasons stated herein, we hold that R.C. 2919.25 does recognize such a legal status and therefore, it is unconstitutional as it applies to one man and one woman who cohabit and have not parented children together.
 {¶ 14} Although the domestic violence statute does not define the term "cohabit", the Ohio Supreme Court has concluded that "the essential elements of `cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium."Williams, supra at paragraph two of the syllabus. The existence of cohabitation is a question of fact, and the Supreme Court listed several factors to guide fact-finders in reaching their determinations.
Possible factors establishing shared familial or financialresponsibilities might include provisions for shelter, food,clothing, utilities, and/or commingled assets. Factors that mightestablish consortium include mutual respect, fidelity, affection,society, cooperation, solace, comfort, aid of each other,friendship, and conjugal relations.
Id. In reaching its holding that the crime of domestic violence arises from the relationship between the parties and not theirliving circumstances, the Supreme Court stated, "[c]learly, the General Assembly believed that an assault involving a family or household member deserves further protection than an assault on a stranger." Id. at paragraph one of the syllabus, 463. Using this definition of cohabitation, the First District Court of Appeals noted that the General Assembly had failed to revise the definitions used in the domestic violence statute so as to exclude same-sex couples, and it found "no tangible benefit" in withholding the protections of R.C. 2919.25 from same-sex couples. State v. Yaden (1st Dist. 1997),118 Ohio App.3d 410, 416-417, 692 N.E.2d 1097.
 {¶ 15} Based on Williams, supra, it appears that cohabitation amounts to the approximation of "the design, qualities, significance or effect of marriage." The domestic violence statute protects a wide class of victims, such as any "person related by consanguinity or affinity to the offender", any person "related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender", or the "natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(a)(ii)-(iv). The term "person living as a spouse" is included in the same section as "spouse" and "former spouse", and the definition of "person living as a spouse" includes cohabitants and people who entered into valid common law marriages prior to 1991.[4] This section of the domestic violence statute clearly categorizes victims based on marital-type relationships.
 {¶ 16} Cohabitation is a necessary element in proving a common law marriage, and also is a reason to terminate spousal support. The Supreme Court has set forth the elements required to prove a common law marriage:[5]
 [t]he fundamental requirement to establish the existence of acommon law marriage is a meeting of the minds between the partieswho enter into a mutual contract to presently take each other asman and wife. The agreement to marry in praesenti is theessential element of a common law marriage. Its absence precludesthe establishment of such a relationship even though the partieslive together and openly engage in cohabitation. Althoughcohabitation and reputation are necessary elements of a commonlaw marriage, this court has previously held that standing alonethey do not constitute a common law marriage. [citationomitted].
 The contract of marriage in praesenti may be proven eitherby way of direct evidence which establishes the agreement, or byway or proof of cohabitation, acts, declarations, and the conductof the parties and their recognized status in the community inwhich they reside. However, all of the essential elements to acommon law marriage must be established by clear and convincingevidence. [citation omitted].
 Where there is no direct proof in reference to the formationof the contract of marriage in praesenti, testimony regardingcohabitation and community reputation tends to raise an inferenceof the marriage. This inference is given more or less strengthaccording to the circumstances of the particular case.
 Nestor v. Nestor (1984), 15 Ohio St.3d 143, 146-147,472 N.E.2d 1091 (emphasis deleted). While not directly defining cohabitation, the court's opinion implies that people who cohabit approximate a marriage relationship as between themselves, and they are required to hold themselves out as spouses to third parties in order to satisfy the requirements of a common law marriage.
 {¶ 17} Spousal support may be terminated upon the recipient's cohabitation with another person. We have previously held that
"cohabitation" entails more than a simple roommaterelationship; this is true even if the roommates are found to behaving sexual relations. [citation omitted]. The term"cohabitation", when used in this particular context, is asubstitute for "remarriage" in that it implies that financialsupport is being provided for or by the new partner. [citationomitted]." Without a showing of financial support, merelyliving with an unrelated member of the opposite sex isinsufficient, in and of itself, to require termination of spousalsupport."
 Stevenson v. Stevenson, 3rd Dist. No. 1-99-98, 2000 WL 688961, at * 8 (citation omitted) (emphasis added). Using a similar definition of cohabitation, Judge Batchelder of the Ninth District Court of Appeals has stated, "cohabitation . . . is becoming virtual common law marriage." Hartman v. Hartman,
9th Dist. No. 22303, 2005-Ohio-4663, at ¶ 21 (Batchelder, J. concurring).
 {¶ 18} The definitions of cohabitation used in both spousal support and domestic violence cases are therefore quite similar in that they require some type of monetary support and some type of consortium, regardless of whether the couple engages in sexual relations. Although common law marriage has been abolished, many Ohio citizens choose to reside together in relationships that mimic marriage, without the legal benefits and protections provided by a ceremonial or common law marriage. For the above reasons, we find that "cohabitation", as applied to one man and one woman, who have not parented any children together, is intended to approximate "the design, qualities, significance or effect of marriage."
 {¶ 19} The next step of our inquiry is to determine whether the domestic violence statute creates or recognizes a legal status for cohabitants. There is no case law in Ohio defining the term "legal status". However, Ohio courts have discussed the concept of "legal status" in many different situations. SeeBenton v. Cracker Barrel Old Country Store, Inc., 10th
Dist. No. 02AP-1211, 2003-Ohio-2890, at ¶ 12 (citing Gladon v.Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287) (a landowner's duty to a person injured on their property is determined by the injured person's legal status as a trespasser, invitee, or licensee); Inre Hill, 3rd Dist. Nos. 14-93-7 and 14-93-8, 1993 WL 291068 (a juvenile may have the legal status of a delinquent); Rice v.Flynn, 9th Dist. No. 22416, 2005-Ohio-4667 (a person may assume or waive the legal status of natural parent); Pacher v.Invisible Fence of Dayton, 2nd Dist. No. 19614,2003-Ohio-5333 (dog's legal status as personally deprived him of legal capacity to sue). Based on these few examples of legal status, it is clear that legal status defines the rights available under the law to somebody falling within that category. Every legal status is imposed by law based on the underlying facts. For example, a landowner's duty to somebody on his or her property may change if that person exceeds the scope of permission granted by the landowner, thus changing their legal status, or when a person gets married, their legal status changes from single to married.
 {¶ 20} "Status" is defined in pertinent part as:
(1) A person's legal condition, whether personal orproprietary; the sum total of a person's legal rights, duties,liabilities, and other legal relations, or any particular groupof them separately considered the status of a landowner.
Black's Law Dictionary (8th Ed. 2004) 1447. As stated above, whether a person is a cohabitant or not is a question of fact based on the circumstances of each individual case; however, when a person is found to be a cohabitant, his or her rights are limited. Spousal support may be discontinued based on cohabitation, cohabitants have no right to property distribution, and cohabitants do not have inheritance rights in each other's estate. Based on the definition of legal status and its treatment by Ohio courts, we hold that there is a legal status for cohabitants, even if the benefits and rights afforded to a cohabitant are minimal.
 {¶ 21} R.C. 2919.25 does not create a legal status for cohabitants because it arises from the underlying facts of the relationship. The purpose of a criminal statute is to "protect the public by prohibiting crime and punishing criminals." Statev. Gross (1914), 91 Ohio St. 161, 164, 110 N.E. 466. In part, Ohio's criminal statutes identify the victim(s) of each crime. Under Ohio's criminal statutes a "victim" is defined as:
a person who is identified as the victim of a crime . . . in apolice report or in a complaint, indictment, or information thatcharges the commission of a crime and that provides the basis forthe criminal prosecution or delinquency proceeding and subsequentproceedings to which this chapter makes reference.
R.C. 2931.01(H). However, within this definition, the General Assembly used the term "victim" to define itself. More specifically, R.C. 2743.51(L)(1) defines "victim" as "a person who suffers personal injury or death as a result of . . . [c]riminally injurious conduct", and more commonly, a "victim" is defined as "[a] person harmed by a crime, tort, or other wrong." Black's Law Dictionary (8th Ed. 2004) 1598. Under the Revised Code, a victim may be identified as a specific person or entity, for example, the specific person injured by an assailant or thief, or the victim may be the public in general, for example, the public is injured by drug traffickers. See R.C. 2903.11-14; 2911; 2925.
 {¶ 22} Crime victims have a limited legal status. They do not determine whether an offender should be charged for his or her actions. 26 OHIO JUR. 3d Criminal Law § 524 (footnote omitted). Likewise, the trial court "shall not dismiss a criminal complaint, charge, information, or indictment * * * solely at the request of the victim and over the objection of the prosecuting attorney," and although the prosecutor is required to "confer with the victim" in certain circumstances, a failure to do so will not affect the disposition of the case. R.C. 2936.06(A). Essentially, a crime victim has no involvement once criminal proceedings are instituted against an offender. However, victims do have specified rights and protections under chapter 2930 of the Revised Code.
 {¶ 23} Relevant to this case, R.C. 2919.25 identifies specific victims of domestic violence. The person's status as a victim is based on the underlying, independent relationship between the offender and the victim. For instance, a "spouse" is a "family or household member" entitled to the protections of the domestic violence statute. Essentially, a spouse-victim has two separate legal statuses, which create a layered effect. The top layer is the person's status as a victim under the criminal code. As you scratch away that top layer, the person is also a spouse, and that legal status entitles the person to additional rights and benefits, such as property rights, inheritance rights, and tax benefits, which would remain intact regardless of the criminal proceedings, unless the spousal relationship has been legally terminated.
 {¶ 24} Based on this analysis, we cannot find that R.C.2919.25 creates a legal status for cohabitants in violation of the Defense of Marriage Amendment. The domestic violence statute merely creates a class of victims based on the underlying relationship between the offender and the victim, in this case, the relationship as cohabitants. However, because the statute includes cohabitants within its definition of "family or household member", which extends the protection of the law to cohabitants. Therefore, we must find that the State hasrecognized the legal status of cohabitation. "Recognize" is defined in pertinent part as: "4: to acknowledge in some definite way: take notice of: as * * * c: to admit the fact or existence of". Webster's Third New International Dictionary of the English Language Unabridged (2002) 1896. In this case, the State has admitted the fact that many Ohioans cohabit without the benefit of a legally sanctioned marriage. "Clearly, the General Assembly believed that an assault involving a family or household member deserves further protection than an assault on a stranger" and accordingly, it enacted the domestic violence statute.Williams, supra at 463. Because the General Assembly has recognized the legal status of cohabitants through R.C. 2919.25, the statute is unconstitutional as applied to heterosexual couples who cohabit and have not parented any children together. The sole assignment of error is sustained.
 {¶ 25} We note the contrary decisions of other appellate districts in the state; however, we believe those courts have failed to address several issues, which have necessarily caused them to arrive at an incorrect conclusion. The Fifth District Court of Appeals determined that R.C. 2919.25 is constitutional. See State v. Newell, 5th Dist. No. 2004CA00264,2005-Ohio-2848. The court reasoned:
the intent of the Defense of Marriage Amendment was toprohibit same sex marriage. The Defense of Marriage Amendment wasspecifically adopted in response to the decision of theMassachusetts' Supreme Court in Goodridge v. Department ofPublic Health (2003), 440 Mass. 309, 798 N.E.2d 941 that theMassachusetts' law limiting the protections, benefits andobligations of civil marriage to individuals of opposite sexeslacked a rational basis and violated state constitutional equalprotection principles. We agree with appellee that the Defense ofMarriage Amendment has no application to criminal statutes ingeneral or the domestic violence statute in particular. * * * "Inconstruing amendments, Ohio courts presume the body enacting theamendment is aware of existing constitutional and statutoryprovisions and their judicial construction. * * * Therefore, hadthe proponents intended to alter Ohio's domestic-violence law,they would have drafted the Marriage Amendment accordingly. Itwas readily apparent by 2004 that Ohio's domestic-violence lawreferred to, but did do not create, a legal status thatapproximates marriage." [citation omitted].
Id. at ¶ 43, 45. However, the issue of whether R.C. 2919.25 is constitutional was not properly before the court. The court acknowledged that the Defense of Marriage Amendment became effective on December 2, 2004, but the defendant committed his offense on July 2, 2004, five months before the amendment became effective. Id. at 42. Ohio law is clear that courts shall not decide constitutional issues if the case may be disposed of on any other matter, and therefore, constitutional questions are not considered unless the question is unavoidable. Wiggins v.Babbitt (1935), 130 Ohio St. 240, 241, 198 N.E. 873; 16 OHIO JUR. 3d Constitutional Law § 103. Because the amendment was not effective when the offender committed his offense, the issue of constitutionality was not properly before the court to decide. Furthermore, in deciding the issue, the court addressed the issue that criminal statutes do not create legal statuses. As discussed above, Ohio's criminal statutes create a legal status for a person identified as a victim pursuant to the criminal code. Although the statutes do not create a legal status for cohabitants, the statute does recognize that legal status, and this point is what our colleagues at the Fifth Appellate District have failed to address.
 {¶ 26} The Twelfth District Court of Appeals found the domestic violence statute to be constitutional. In its recent opinion, the court noted:
we do not find that R.C. 2919.25 creates or recognizes a"legal status for relationships of unmarried individuals." Thestatute does not determine "the nature of the legal relations tothe state or to other persons" that a cohabitant may enter, nordoes it determine a cohabitant's legal capacities. The statutedoes not confer or take away from a cohabitant a set of legalrights. The statute's scope is very narrow; it defines theconduct that constitutes the crime of domestic violence, and setsforth categories of individuals considered potential victimsunder the statute. The statute classifies a cohabitant as one ofmany potential victims. We do not find that such classificationcreates a "legal status" for relationships between unmarried,cohabiting individuals.
 State v. Carswell, 12th Dist. No. CA2005-04-047,2005-Ohio-6547, at ¶ 18. However, the court, much like the Fifth Appellate District, failed to distinguish a statute thatcreates a legal status from a statute that recognizes a legal status. The Defense of Marriage Amendment uses both words, in the disjunctive, and we must presume that the voters and the General Assembly intended to use both words with their separate meanings. See Cleveland Tel. Co. v. Cleveland (1918), 98 Ohio St. 358,121 N.E. 701. Additionally, the court noted, "[e]ven if we construed R.C. 2919.25 to create or recognize a `legal status for relationships of unmarried individuals,' the statute would still be constitutional because it does not `intend to approximate the design, qualities, significance, or effect of marriage.' Thelanguage of the statute expresses no such intent." Carswell,
supra at ¶ 19 (emphasis added). We do not agree with the court's interpretation of the amendment. The second sentence of the amendment states, "[t]his state and its political subdivisions shall not create or recognize a legal status for relationships
of unmarried individuals that intends to approximate the design,qualities, significance or effect of marriage." The Defense of Marriage Amendment clearly states that the relationship must intend to approximate marriage, not the statute itself.
 {¶ 27} The Seventh Appellate District found R.C. 2919.25
constitutional. State v. Rexroad, 7th Dist. Nos. 05-CO-36 and 05-CO-52, 2005-Ohio-6790. In that case, the trial court had granted two defendants' motions to dismiss the indictment. The court found the trial court's decision had come too early because the defendants had presented no facts upon which the statute could be found unconstitutional. The court then held that the statute is not facially unconstitutional because the protections afforded to "spouses, children, and people related by consanguinity" would pass constitutional muster. In the matter at bar, we have not reached the issue of whether the statute is unconstitutional on its face. Instead, McKinley pled guilty to a violation of R.C. 2919.25, thereby admitting the facts of the crime, and we found the statute unconstitutional as applied.
 {¶ 28} In State v. Burk, 8th Dist. No. 86162,2005-Ohio-6727, the court essentially determined that mere cohabitation does not create a legal status. However, as discussed above, cohabitants do have a legal status, though that status tends to limit their rights as compared to legally married couples.
 {¶ 29} The Ninth District Court of Appeals has interpreted both the Defense of Marriage Amendment and the domestic violence statute and found the statute to be constitutional. State v.Nixon, 9th Dist. No. 22667, 2006-Ohio-72. However, the court relied on the purpose behind the amendment to support its finding. As stated above, the question raised by these cases does not require us to interpret the constitutional amendment. We are called upon to interpret a statute, which requires only an analysis of the amendment's effect upon the statute, not an analysis of the intent behind the amendment.
 {¶ 30} In State v. Rodgers, 10th Dist. No. 05-AP-446,2006-Ohio-1528, the court found that the statute cannot be unconstitutional "as applied" because the definition of "person living as a spouse" does "not create a legal status for relationships of unmarried individuals that approximates marriage." Id. at ¶ 15. As noted above, the statute does not create the legal status, but it does recognize the legal status of cohabitants and runs afoul of the Defense of Marriage Amendment. The court also rejected a facial challenge to the statute finding that there are circumstances under which the statute could constitutionally operate.
 {¶ 31} We also note the opinion of the Second Appellate District, finding the domestic violence statute unconstitutional when applied to cohabitants. State v. Ward, 2nd Dist. No. 2005-CA-75, 2006-Ohio-1407. The Second District held that the definition of "cohabitation" "could serve just as readily as a definition of the marital relationship." Id. at ¶ 32. The court noted that cohabitation is the type of "quasi-marriage" the Defense of Marriage Amendment was intended to restrict.
 {¶ 32} For the reasons stated above, the sole assignment of error is sustained, and the judgment of the Logan County Common Pleas Court is reversed. This cause is remanded, and the trial court is instructed to dismiss the indictment. We note this court is required to apply the Constitution of Ohio as amended, even if enforcement may have adverse ramifications and unexpected or unintentional consequences to the public that amended it. We observe further that heterosexual cohabitants are not left unprotected by our ruling. An appropriate conviction may be sought by filing assault charges or other appropriate charges against an offender in accordance with chapter 2903 of the Revised Code.
 {¶ 33} Because today's decision is in conflict with State v.Newell, 5th Dist. No. 2004CA00264, 2005-Ohio-2848; State v.Carswell, 12th Dist. No. CA2005-04-047, 2005-Ohio-6547;State v. Burk, 8th Dist. No. 86162, 2005-Ohio-6727; Statev. Rexroad, 7th Dist. Nos. 05-CO-36, 05-CO-52,2005-Ohio-6790; State v. Nixon, 9th Dist. No. 22667,2006-Ohio-72; and State v. Rodgers, 10th Dist. No. 05AP446,2006-Ohio-1528, we certify the record of this case to the Ohio Supreme Court for review and final determination on the following question: Does Section 11, Article XV of the Ohio Constitution, the Defense of Marriage Amendment, render the domestic violence statute, R.C. 2919.25, unconstitutional as applied to unmarried, heterosexual cohabitants who have not parented any children together?
Judgment Reversed.
[1] McKinley had three prior convictions for domestic violence in Bellefontaine Municipal Court cases 04CRB90-A, 01CRB1701-A, and 98CRB1697-A, which elevated the pending matter to a third degree felony.
[2] Section 11, Article XV of the Ohio Constitution.
[3] A plea of no contest "is not an admission of [the] defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint[.]" Crim.R. 11(B)(2); State v. Trushel, 3rd Dist. No. 13-04-44,2005-Ohio-3763, at ¶ 3.
[4] Ohio abolished common law marriage in 1991.
[5] This analysis applies to those common law marriages entered into prior to 1991.