OPINION
{¶ 1} Defendant-Appellant, Russell L. Logsdon, appeals the judgment of the Seneca County Court of Common Pleas finding him guilty of one count of domestic violence and sentencing him to four years in prison. On appeal, Logsdon asserts that the jury verdict finding him guilty of domestic violence was against the manifest weight of the evidence; that the trial court erred in denying his motion for judgment of acquittal under Crim.R. 29(A); that he was erroneously convicted under the domestic relations statute which treated him as if he was married to the alleged victim, in violation of the Ohio Constitution; that the trial court erred in granting the State's motion in limine; and, that the sentencing violated the Apprendi doctrine as explained inBlakely v. Washington and was therefore unconstitutional. Based on the following, we reverse the judgment of the trial court.
 {¶ 2} In February of 2005, the Seneca County Grand Jury indicted Logsdon for one count of domestic violence in violation of R.C. 2919.25(A), a felony of the third degree,[1] one count of abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree, and one count of intimidation of a crime victim in violation of R.C. 2921.04(A), a misdemeanor of the first degree.
 {¶ 3} In March of 2005, Logsdon was arraigned and pled not guilty to all of the counts in the indictment.
 {¶ 4} In April of 2005, Logsdon filed a motion in limine to exclude evidence regarding all alleged past acts, any alleged history of alcohol or drug abuse, and Logsdon's prior criminal record except his prior domestic violence convictions.
 {¶ 5} Additionally, Logsdon filed a motion to dismiss the charge of domestic violence. In his motion to dismiss, Logsdon claimed that the Defense of Marriage Amendment, Section 11, Article XV of the Ohio Constitution (hereinafter referred to as "Defense of Marriage Amendment") rendered R.C. 2919.25
unconstitutional, and that the application of R.C. 2919.25
violated his due process rights as guaranteed by the Fifth andFourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 6} In May of 2005, the State filed a motion in limine to prohibit Logsdon from querying any witness as to the purported alcohol use of Debra Lentz, the victim in this case. Subsequently, the trial court held a hearing on the motions before it. After the hearing, the trial court granted the State's and Logsdon's motions in limine in part, and the trial court denied Logsdon's motion to dismiss the charge of domestic violence on the unconstitutionality of the R.C. 2919.25(A), based upon the Franklin County Court of Common Pleas decision in Statev. Rodgers, 131 Ohio Misc.2d 1, 2005-Ohio-1730. Also, the State moved to dismiss the intimidation of a crime victim count of the indictment, which the trial court subsequently granted.
 {¶ 7} In June of 2005, a jury trial was held on the charges of domestic violence and abduction. At the conclusion of the trial, the jury unanimously found Logsdon guilty of domestic violence and not guilty of abduction. Subsequently, Logsdon was sentenced to four years in prison.
 {¶ 8} Logsdon appeals his judgment and sentence, presenting the following assignments of error for our review:
 Assignment of Error No. I The verdict finding the Appellant guilty of Domestic Violencewas against the manifest weight of the evidence.
 Assignment of Error No. II The Trial Court erred in granting (Sic.) the Appellant'sMotion for Judgment of Acquittal Under Ohio Criminal Rule 29(A).
 Assignment of Error No. III The Appellant was erroneously convicted under a law whichtreated him as if he was married to the alleged victim, inviolation of the Ohio Constitution's ban on such similartreatment.
 Assignment of Error No. IV The Trial Court erred to the prejudice of the Appellant ingranting the State's Motion in Limine by not allowing evidence ofthe Lentz's intoxication after 2:44 P.M. on January 26, 2005.
 Assignment of Error No. V Sentencing in this violated the Apprendi doctrine asexplained in Blakely v. Washington and was thereforeunconstitutional.
 {¶ 9} Due to the nature of Logsdon's assignments of error, we elect to address them out of order.
 Assignment of Error No. III {¶ 10} In his third assignment of error, Logsdon asserts that the trial court erred in not granting his motion to dismiss, which alleged that Ohio's domestic violence law was rendered unconstitutional. Specifically, Logsdon asserts that the Defense of Marriage Amendment rendered Ohio's domestic violence law, under R.C. 2919.25, unconstitutional. We agree.
 {¶ 11} We review the denial of Logsdon's motion to dismiss de novo. State v. Stallings, 150 Ohio App.3d 5, 2002-Ohio-5942, at ¶ 6, citing State v. Benton (2000), 136 Ohio App.3d 801, 805. A determination of the constitutionality of a statute or ordinance is a question of law, reviewed de novo. City of Akron v.Callaway, 162 Ohio App.3d 781, 2005-Ohio-4095, at ¶ 23;Andreyko v. City of Cincinnati, 153 Ohio App.3d 108,2003-Ohio-2759, at ¶ 11. De novo review is an independent review, without deference to the lower court's decision. See Ohio BellTel. Co. v. Pub. Util. Comm. of Ohio (1992), 64 Ohio St.3d 145,147.
 {¶ 12} In Ohio, it is well-settled that legislative enactments are presumed constitutional. State v. Collier
(1991), 62 Ohio St.3d 267, 269; State v. Renalist, Inc. (1978),56 Ohio St.2d 276; State ex rel. Dickman v. Defenbacher (1955),164 Ohio St. 142; City of Xenia v. Schmidt (1920),101 Ohio St. 437; R.C. 1.47(A). The Ohio Supreme Court has stated, "A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. This court has held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt." Defenbacher, 164 Ohio St. at 147. When construing legislative enactments, the courts are bound to avoid an unconstitutional construction if it is reasonably possible to do so. United Air Lines v. Porterfield (1971),28 Ohio St.2d 97. Accordingly, where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities. Woods v. Telb, 89 Ohio St.3d 504,516, 2000-Ohio-171. Moreover, the Ohio Supreme Court has warned that the courts should avoid deciding constitutional issues unless absolutely necessary. Hall China Co. v. Public UtilitiesComm. (1977), 50 Ohio St.2d 206, 210.
 {¶ 13} A statute may be challenged on constitutional grounds in two ways: (1) that the statute is unconstitutional on its face, or (2) that it is unconstitutional as applied to the facts of the case. Harrold v. Collier, 107 Ohio St.3d 44,2005-Ohio-5334, ¶ 37, citing Belden v. Union Central Life Ins.Co. (1944), 143 Ohio St. 329, para. four of the syllabus. To mount a successful facial challenge, the party challenging the statute must demonstrate that there is no set of facts or circumstances under which the statute can be upheld. Id. citingUnited States v. Salerno (1987), 481 U.S. 739, 745. Where it is claimed that a statute is unconstitutional as applied, the challenge must present clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional and void when applied to those facts. Id. at ¶ 38, citing Belden, 143 Ohio St. 329, para. six of the syllabus.
 {¶ 14} The rules employed in statutory construction apply to the construction of constitutional provisions. State v.Jackson, 102 Ohio St.3d 380, 2004-Ohio-3206. The intent of the framers is controlling. Id. "In the interpretation of an amendment to the Constitution the object of the people in adopting it should be given effect; the polestar in the construction of constitutional, as well as legislative, provisions is the intention of the makers and adopters thereof."Castleberry v. Evatt (1946), 147 Ohio St. 30, para. one of the syllabus.
 {¶ 15} On November 2, 2004, the voters of the State of Ohio approved the Defense of Marriage Amendment to the Ohio Constitution. The Amendment defines marriage in Ohio and states:
Only a union between one man and one woman may be a marriagevalid in or recognized by this state and its politicalsubdivisions. This state and its political subdivisions shallnot create or recognize a legal status for relationships ofunmarried individuals that intends to approximate the design,qualities, significance or effect of marriage.
Defense of Marriage Amendment (emphasis added). The Defense of Marriage Amendment became effective on December 2, 2004.
 {¶ 16} The Ohio Domestic Violence statute, R.C. 2919.25, provides in pertinent part:
(A) No person shall knowingly cause or attempt to causephysical harm to a family or household member.
 (B) No person shall recklessly cause serious physical harm toa family or household member.
 (C) No person, by threat of force, shall knowingly cause afamily or household member to believe that the offender willcause imminent physical harm to the family or household member.(D)(1) Whoever violates this section is guilty of domesticviolence.
 {¶ 17} The Ohio Domestic Violence statute defines family or household member to include any of the following who live with or have lived with the offender:
(F) As used in this section and sections 2919.251 [2919.25.1]and 2919.26 of the Revised Code:
 (1) "Family or household member" means any of the following:
 Any of the following who is residing or has resided with theoffender:
 (i) A spouse, a person living as a spouse, or a former spouseof the offender;
 (ii) A parent or a child of the offender, or another personrelated by consanguinity or affinity to the offender;
 (iii) A parent or a child of a spouse, person living as aspouse, or former spouse of the offender, or another personrelated by consanguinity or affinity to a spouse, person livingas a spouse, or former spouse of the offender.
 (b) The natural parent of any child of whom the offender isthe other natural parent or is the putative other naturalparent.
 (2) "Person living as a spouse" means a person who is livingor has lived with the offender in a common law maritalrelationship, who otherwise is cohabiting with the offender, orwho otherwise has cohabited with the offender within five yearsprior to the date of the alleged commission of the act inquestion.
 {¶ 18} This Court has recently addressed whether R.C. 2919.25
is constitutional in State v. McKinley, 3d Dist. No. 8-05-14,2006-Ohio-2507 and State v. Shaffer, 3d. Dist. No. 15-05-55,2006-Ohio-2662. In both cases, this Court found that the Defense of Marriage Amendment rendered R.C. 2919.25 unconstitutional as applied in those cases. See McKinley, supra; Shaffer, supra.
 {¶ 19} As noted above, we begin by presuming that R.C.2919.25 is constitutional. Defenbacher, 164 Ohio St. at 147. The first step of our analysis requires us to determine whether Logsdon is challenging the statute on its face or as applied to a particular set of facts. Yajnik v. Akron Dept. of Health,Housing Div., 101 Ohio St.3d 106, 2004-Ohio-357, at ¶ 14. In this case, Logsdon's argument amounts to an as-applied challenge, because he argues that R.C. 2919.25 is unconstitutional as it is applied to him. Accordingly, Logsdon must present clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional and void when applied to those facts. See Collier, 107 Ohio St.3d at 50, ¶ 36-38.
 {¶ 20} First, it is undisputed that Logsdon and Lentz are not and never were married. Additionally, no evidence was presented that Logsdon and Lentz had a child together. Thus, to convict Logsdon for domestic violence under R.C. 2919.25, the State needed to prove that Lentz was a "person living as a spouse." In order for Lentz to be considered a "person living as a spouse", Lentz must either "[be] cohabiting with the offender * * * or * * * [have] cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).
 {¶ 21} Although the R.C. 2919.25 does not define the term "cohabit", the Ohio Supreme Court has stated "the essential elements of `cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium." State v.Williams, 79 Ohio St.3d 459, 1997-Ohio-79, para. two of the syllabus; R.C. 2919.25(E)(2). Whether cohabitation exists is a question of fact, and the Ohio Supreme Court has listed several factors to assist fact finders in making this determination:
Possible factors establishing shared familial or financialresponsibilities might include provisions for shelter, food,clothing, utilities, and/or commingled assets. Factors that mightestablish consortium include mutual respect, fidelity, affection,society, cooperation, solace, comfort, aid of each other,friendship, and conjugal relations.
 Williams, 79 Ohio St.3d at 465.
 {¶ 22} Here, it is undisputed that Logsdon and Lentz have resided with each other within five years prior to the alleged acts in question in this case. Lentz testified that on January 26, 2005, she resided with her son and Logsdon and that Logsdon had resided at her house for approximately the last thirteen years. Additionally, Lentz testified that Logsdon helped with upkeep of the residence, kept his belongings and clothes in her residence, and helped pay the household bills. Accordingly, under the evidence presented, Lentz satisfied the requirements of R.C.2919.25(F)(2) to be considered a "person living as a spouse" and would be considered a "family or household member" under R.C.2919.25(F)(1)(a)(i).
 {¶ 23} However, Defense of Marriage Amendment requires that the "state * * * shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." (Emphasis added). For the reasons set forth below, R.C. 2919.25 is unconstitutional as applied to Logsdon.
 {¶ 24} First, the language of R.C. 2919.25(F)(1)(a)(i) provides that a "person living as a spouse" is provided the protection of the domestic violence statute. (Emphasis added). The use of the word "spouse" in R.C. 2919.25(F)(1)(a)(i) recognizes a legal status for relationships of unmarried individuals that intends to approximate the significance or effect of marriage. If the General Assembly did not want to approximate the significance or effect of marriage, it could have used a word other than "spouse."
 {¶ 25} Additionally, the definition of "person living as a spouse" includes persons who have cohabited with the offender within five years prior to the date of the alleged commission of the act in question or are currently cohabiting with the offender. R.C. 2919.25(F)(2). As noted above, R.C. 2919.25 does not define "cohabit", but the Ohio Supreme Court has provided that "the essential elements of `cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium."Williams, 79 Ohio St.3d 459, para. two of the syllabus; R.C.2919.25(F)(2). Further, Ohio Supreme Court has listed several factors to assist fact finders in determining whether two persons are cohabiting:
Possible factors establishing shared familial or financialresponsibilities might include provisions for shelter, food,clothing, utilities, and/or commingled assets. Factors that mightestablish consortium include mutual respect, fidelity, affection,society, cooperation, solace, comfort, aid of each other,friendship, and conjugal relations.
 Williams, 79 Ohio St.3d at 465. We agree with the Second District when it stated, "This definition [of cohabitation] could serve just as readily as a definition of the marital relationship." Ward, 2006-Ohio-1407 at ¶ 32. This conclusion is further supported by the common usage of the word "cohabit." See R.C. 1.42. Webster's New Collegiate Dictionary's defines "cohabit" as "to live together as or as if as husband and wife." Webster's New Collegiate Dictionary 257 (1986 9th Ed.). Thus, the requirement that unmarried individuals must cohabit in order to obtain protection under R.C. 2919.25(A) recognizes a legal status that intends to approximate the significance or effect of marriage.
 {¶ 26} Finally, because the victim obtains the protections under R.C. 2919.25(A) solely by his or her status as a "person living as a spouse", it could be argued that R.C. 2919.25 creates a legal status that intends to approximate the significance or effect of marriage. The Ohio Supreme Court noted that "the General Assembly believed that an assault involving a family or household member deserves further protection than an assault on a stranger." Williams, 79 Ohio St.3d 459, para. one of the syllabus, 463. We believe that if the General Assembly wished to only provide this further protection to spouses and former spouses, it could have left out the class of victims which it termed "person[s] living as a spouse." However, the creation of this class of victims has arguably created or at least recognized a legal status for relationships of unmarried individuals that intends to approximate the significance or effect of marriage.
 {¶ 27} We conclude that the "person living as a spouse" provision of R.C. 2919.25 does violate the Defense of Marriage Amendment. We note that this court is required to apply the law. The voters of the State of Ohio voted in favor of a new constitutional amendment, which created adverse ramifications and unintended consequences in many unexpected areas of the law. We are not inclined to reconcile the language of the statute with politically correct standards, in effect, defining public policy. This court is duty-bound to apply the law. Public policy is the prerogative of the legislature. We also note that after our decision today, heterosexual cohabitants are not left unprotected. An appropriate remedy may be sought by filing assault or other charges against the offender in accordance with chapter 2903 of the Revised Code.
 {¶ 28} Because today's decision is in conflict with State v.Newell, 5th Dist. No. 2004CA00264, 2005-Ohio-2848; State v.Carswell, 12th Dist. No. CA2005-04-047, 2005-Ohio-6547; Statev. Burk, 8th Dist. No. 86162, 2005-Ohio-6727; State v.Rexroad, 7th Dist. Nos. 05-CO-36, 05-CO-52, 2005-Ohio-6790;State v. Nixon, 9th Dist. No. 22667, 2006-Ohio-72; and Statev. Rodgers, 10th Dist. No. 05AP446, 2006-Ohio-1528, we certify the record of this case to the Ohio Supreme Court for review and final determination on the following question: Does the legislature's use of the term "person living as a spouse" to define "a family or household member" under R.C. 2919.25, "create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage" in violation of the Defense of Marriage Amendment, Section 11, Article XV of the Ohio Constitution?
 {¶ 29} Accordingly, Logsdon's third assignment of error is sustained.
 Assignments of Error Nos. I, II, IV, and V {¶ 30} In his first assignment of error, Logsdon asserts that the jury's verdict was against the manifest weight of the evidence. In his second assignment of error, Logsdon asserts that the trial court erred in denying his motion for judgment of acquittal under Crim.R. 29(A). In his fourth assignment of error, Logsdon asserts that the trial court erred in granting the State's motion in limine by not allowing evidence of Lentz's intoxication after 2:44 p.m. on January 26, 2005. In his fifth assignment of error, Logsdon asserts that his sentence violated the Apprendi doctrine as explained in Blakely v. Washington
and is therefore unconstitutional. Our resolution of Logsdon's third assignment of error renders his first, second, fourth, and fifth assignments of error moot and we decline to address them. App.R. 12(A)(1)(c).
 {¶ 31} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and vacate the conviction and sentence of the trial court.
Judgment Reversed and Conviction and Sentence Vacated.
 Shaw, J., concurs.
[1] Because Logsdon previously had been convicted of domestic violence on two separate occasions, the offense was a felony of the third degree. R.C. 2919.25(D)(4). In 1995, Logsdon was convicted of domestic violence in Tiffin Municipal Court Case Number 95CRB353. In 1996, Logsdon pled guilty and was convicted of domestic violence in Seneca County Court of Common Pleas Case Number 8781.