OPINION
{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5), to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Defendant-Appellant, Justin McKinney, appeals the judgment of the Marysville Municipal Court convicting and sentencing him on one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. On appeal, McKinney asserts that the trial court's verdict was against the manifest weight of the evidence and that R.C. 2919.25(A) was unconstitutional as applied to him. Based on our decisions in State v. Logsdon, 3d Dist. No. 13-05-29,2006-Ohio-2938 and State v. McKinley, 3d Dist. No. 8-05-14,2006-Ohio-2507, we reverse the judgment of the trial court.
 {¶ 3} In February of 2006, the State filed a complaint against McKinney for, among other things, one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree.
 {¶ 4} In March of 2006, McKinney pled not guilty and a trial was scheduled for May of 2006.
 {¶ 5} In May of 2006, McKinney waived his right to a jury trial and a bench trial was held. At trial, the following testimony was presented:
 {¶ 6} Lisa Clutter, the victim in this case, testified that McKinney lived at her residence from the end of October 2005 to February 22, 2006. Clutter continued that on February 22, 2006, she entered her residence and noticed McKinney come out of her living room with a half gallon of milk carton full of gasoline; that "[McKinney] was inhaling the [gasoline]" (tr. p. 7); that she left her residence and ran towards her car, because McKinney was chasing after her; that when she left, McKinney had told her to stop, "but [she] wanted to get out and away from him"; that McKinney chased her down behind her garage and was trying to grab her keys; that she proceeded to go down an alley towards a friend's house and McKinney followed her grabbing onto her arms; and, that after she proceeded approximately two houses away from her house, McKinney grabbed and kneed her in the stomach. Clutter also indicated that after McKinney hit her, she received help from a friend; that her neighbor called the Richwood Police Department; that she had no bruises; and, that "[McKinney] was totally out of his mind." (Tr. p. 9).
 {¶ 7} Chad Fitch testified that on February 22, 2006, he saw McKinney and Clutter in the alley behind his house; that his wife saw them fighting behind his house and thought that McKinney was going to hit Clutter; that he heard Clutter yell for help; that he went out to help and McKinney yelled at and was aggressive towards him; that Clutter stated that McKinney "had been on gas all day" (tr. p. 12); that McKinney threatened to go back to his house and retrieve a shotgun if he and Clutter called the cops; that McKinney went back to his house and never came back; and, that he and Clutter called the police.
 {¶ 8} Ryan Flowers, a police officer with the Plain City Police Department, testified that on February 22, 2006, he was employed by the Richwood Police Department; that he was called for a domestic dispute and came into contact with McKinney in an alley behind 162 North Franklin Street within the Village of Richwood, Union County, Ohio; that he arrived in uniform and drove a Richwood police car; that he met with Clutter, who "was very excited, very scared, [and] emotional", and did not see McKinney, who was "slightly deranged", for approximately ten minutes (tr. p. 16); and, that he called for backup because Clutter advised him that McKinney had commented about going back to her residence to possibly retrieve a shotgun.
 {¶ 9} Officer Flowers continued that Deputy Henry and Deputy Herman from the Union County Sheriffs office arrived as back up; that when Deputy Henry and Deputy Herman arrived, McKinney came out of Clutter's residence unarmed, cussed at them, and began walking back into the residence; that he and Deputy Henry approached McKinney and kept him from going back into the residence; that he advised McKinney that he was going to be cited for disorderly conduct and placed him under arrest for persistent disorderly conduct; that he and Deputy Henry struggled handcuffing McKinney, because McKinney tried to pull away and sat down; that McKinney refused to go towards the police car; that Deputy Herman had to taser McKinney; and, that McKinney was taken to the hospital because he was tasered.
 {¶ 10} On cross-examination, Officer Flowers testified that prior to arresting McKinney for persistent disorderly conduct, he warned McKinney that he was going to be cited for disorderly conduct.
 {¶ 11} Deputy Matt Henry, a Deputy Sheriff with the Union County Sheriffs office, testified that on February 22, 2006, he assisted Officer Flowers by maintaining a perimeter around Clutter's residence; that he observed McKinney enter into the back patio area of the residence; and, that McKinney did not appear to be acting normally.
 {¶ 12} Deputy Lyle Herman, a Deputy Sheriff with the Union County Sheriffs office, testified that on February 22, 2006, he received a dispatch, which informed him that a male subject involved in a domestic dispute had threatened to shoot the female victim and himself; that he arrived at the scene after Officer Flowers and Deputy Henry had taken McKinney into custody and were trying to walk McKinney to a cruiser; that he warned McKinney that he would be tasered if he did not cooperate; that "[McKinney] kept screaming he wanted some ring back from his girlfriend" (tr. p. 28) and continued to be uncooperative, so he tasered McKinney; that medics were called to look at the marks left by the taser; and, that McKinney's demeanor was argumentative.
 {¶ 13} After Deputy Herman testified, the State rested and McKinney moved under Crim.R. 29 for acquittal on the domestic violence and other charges. Specifically, with regards to the charge of domestic violence, McKinney argued that the State failed to provide evidence that Clutter was a "household member" as defined in the domestic violence statute as a "person living as a spouse" and that the Second District had found the domestic violence statute, as applied to him, to be unconstitutional by reason of the Defense of Marriage Amendment, Section 11, Art. XV, of the Ohio Constitution. (Tr. p. 29). The trial court never ruled on McKinney's Crim.R. 29 motion for acquittal on the domestic violence charge and McKinney never objected to the failure to rule.
 {¶ 14} McKinney called Clutter to testify as if on cross-examination. Clutter testified that McKinney began living with her in October of 2005, because "[McKinney] didn't have a place to live and my husband brought him to our residence." (Tr. p. 33) Clutter continued that McKinney worked for her husband; that McKinney did not pay rent; and, that "[McKinney] bought groceries like (Sic.) one time." (Tr. p. 34). On redirect examination, Clutter testified that she and McKinney shared a bedroom for approximately a month; that they did "go out"; and, that McKinney did not help pay the bills. (Tr. p. 35).
 {¶ 15} After Clutter testified, McKinney renewed his Crim.R. 29 motion for acquittal, because there was no evidence presented that Clutter was a household member defined in the domestic violence statute as a person living as a spouse. However, the trial court never ruled on McKinney's Crim.R. 29 motion for acquittal.
 {¶ 16} After the bench trial, the trial court found McKinney guilty of one count of domestic violence in violation of R.C. 2919.25, a misdemeanor of the first degree, and sentenced McKinney to thirty days in jail, of which twenty-five were suspended.[1]
 {¶ 17} It is from this judgment that McKinney appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE.
 Assignment of Error No. II APPELLANT'S CONVICTION IS UNCONSTITUTIONAL.
 {¶ 18} Due to the nature of McKinney's assignments of error, we elect to address them out of order.
 Assignment of Error No. II {¶ 19} In his second assignment of error, McKinney asserts that the domestic violence statute is unconstitutional as applied to him, because he was not married to the victim. Specifically, McKinney argues that based upon this Court's decision in State v. McKinley, 3d Dist. No. 8-05-14, 2006-Ohio-2507, this Court must find that the application of R.C. 2919.25(A) to the facts of this case unconstitutional and reverse his conviction for domestic violence. We agree.
 {¶ 20} On November 2, 2004, the voters of the State of Ohio approved the Defense of Marriage Amendment to the Ohio Constitution. The amendment defines marriage in Ohio and states:
 Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage.
Defense of Marriage Amendment, Section 11, Art. XV, Ohio Constitution (emphasis added). The Defense of Marriage Amendment became effective on December 2, 2004.
 {¶ 21} The Ohio Domestic Violence statute, R.C. 2919.25, provides in pertinent part:
 (A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 (B) No person shall recklessly cause serious physical harm to a family or household member.
 (C) No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.
 (D)(1) Whoever violates this section is guilty of domestic violence.
The statute defines family or household member to include any of the following who live with or have lived with the offender:
 (F) As used in this section and sections 2919.251 [2919.25.1] and 2919.26 of the Revised Code:
 (1) "Family or household member" means any of the following:
 (a) Any of the following who is residing or has resided with the offender:
 (i) A spouse, a person living as a spouse, or a former spouse of the offender;
 (ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender; (iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
 (b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.
 (2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.
 {¶ 22} We have recently addressed this argument in State v.McKinley, supra, and found that the Domestic Violence Statute is unconstitutional when applied to individuals in McKinney's position. We found that, because the statute specifically refers to persons "living as a spouse", the statute recognizes a legal status for individuals who cohabitate, and therefore it is unconstitutional as applied to unmarried persons who are living together at the time of the commission of the offense. Id. at ¶¶ 13 24. We also addressed this argument in State v.Logsdon, supra, and found that the Domestic Violence statute creates and recognizes a legal status for individuals who cohabitate, and therefore it is unconstitutional as applied to unmarried persons who are living together at the time of the offense. Id. at ¶¶ 24-26
 {¶ 23} In doing so, we noted that it was unlikely that this was an intended result of the Defense of Marriage Amendment. Id. at ¶ 27;McKinley, 2006-Ohio-2507, at ¶¶ 13 24. However, we felt constrained to apply the amended provision of the Ohio Constitution as written, and held that the relationship established in the statute for cohabitants intended to "approximate the design, qualities, significance, or effect of marriage" in violation of the Amendment. McKinley, 2006-Ohio-2507, at ¶ 24. Moreover, we recognized that "heterosexual cohabitants are not left unprotected by our ruling," because appropriate charges can be brought against these individuals under Ohio's assault statute. Id. Therefore, in accordance with our rulings in McKinley andLogsdon, McKinney's second assignment of error is well taken.
 Assignment of Error No. I {¶ 24} In his first assignment of error, McKinney argues that his conviction was against the manifest weight of the evidence, because the State did not prove beyond a reasonable doubt that he and Clutter were cohabitating. Our disposition of McKinney's second assignment of error renders this assignment of error moot, and we decline to address it. App.R. 12(A)(1)(c).
 {¶ 25} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed.
 SHAW, J., concurs.
[1] We note that McKinney has filed a motion to reconsider based on this Court's decision in State v. McKinley, 3d Dist. No. 8-05-14,2006-Ohio-2507, which was issued the same day as his bench trial, and the trial court stayed McKinney's sentence pending the Ohio Supreme Court's resolution of State v. Carswell, Case no. 2006-0151.