OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the decision of the Warren County Court of Common Pleas finding that Ohio's domestic violence statute is unconstitutional as applied to defendant-appellee, Michael Carswell, an unmarried individual. We reverse the common pleas court's decision.
 {¶ 2} In February 2005, appellee was indicted for one count of domestic violence in violation of R.C. 2919.25(A). The state alleged that appellee knowingly caused or attempted to cause physical harm to Shannon Hitchcock, a family or household member. The count was a third degree felony due to appellee's two prior domestic violence convictions. It is undisputed that appellee and Hitchcock were not married at the time of the alleged offense.
 {¶ 3} In March 2005, appellee filed a motion to dismiss, arguing that the domestic violence statute under which he was indicted violated Section 11, Article XV of the Ohio Constitution as applied to him. That section, commonly known as "Issue 1," was a constitutional amendment adopted by Ohio voters in November 2004. The section sets forth a legal definition of marriage, and prohibits state creation or recognition of a marriage-like status for unmarried individuals. Appellee argued that the domestic violence statute was unconstitutional because it applied to unmarried, cohabiting individuals as if they were married individuals, thereby granting unmarried individuals a marriage-like status.
 {¶ 4} Ruling on appellee's motion in April 2005, the court determined that the domestic violence statute was unconstitutional as applied to unmarried, cohabiting individuals because it conferred a "marital-type" status to such individuals. Pursuant to Crim.R. 7(D), the court amended the indictment to allege assault.
 {¶ 5} The state now appeals, assigning one error as follows: "The Trial Court incorrectly ruled that it appears beyond a reasonable doubt that any conflict between the Marriage Amendment and the Domestic Violence Statute is necessary and obvious, and that no fair course of reasoning can reconcile the law and Constitution." The state argues that the domestic violence statute and the constitutional provision are reconcilable. According to the state, the domestic violence statute does not create or recognize a "legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effect of marriage."
 {¶ 6} A determination of the constitutionality of a statute or ordinance is a question of law, reviewed de novo. Akron v.Callaway, 162 Ohio App.3d 781, 2005-Ohio-4095, ¶ 23; Andreykov. Cincinnati, 153 Ohio App.3d 108, 2003-Ohio-2759, ¶ 11. De novo review is an independent review, without deference to the lower court's decision. See Ohio Bell Tel. Co. v. Pub. Util.Comm. of Ohio (1992), 64 Ohio St.3d 145, 147.
 {¶ 7} It is well established that legislative enactments enjoy a strong presumption of constitutionality. State v.Collier (1991), 62 Ohio St.3d 267, 269; R.C. 1.47(A). Applying the above presumption and the pertinent rules of construction, courts must uphold, if at all possible, a statute assailed as unconstitutional. State v. Dorso (1983), 4 Ohio St.3d 60, 61. Accordingly, where constitutional questions are raised, courts will liberally construe a statute to save it from constitutional infirmities. Woods v. Telb, 89 Ohio St.3d 504, 516,2000-Ohio-171. The party challenging the constitutionality of a statute bears the burden of proving the constitutional invalidity of that statute. State v. Anderson (1991), 57 Ohio St.3d 168,171.
 {¶ 8} R.C. 2919.25(A), the section under which appellee was indicted, states as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(F)(1) states that "family or household member" means any of the following:
 {¶ 9} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 10} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 11} "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
 {¶ 12} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
 {¶ 13} "(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent."
 {¶ 14} R.C. 2919.25(F)(2) defines "person living as a spouse" as follows: "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
 {¶ 15} Section 11, Article XV of the Ohio Constitution, Ohio's "Defense of Marriage" amendment, provides as follows: "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage."
 {¶ 16} Based on the language of Section 11, Article XV, it is clear that its enactment was not an express attempt to overrule R.C. 2919.25 as it applies to unmarried, cohabiting individuals. Therefore, if appellee's constitutional argument is valid, the enactment of Section 11, Article XV must have overruled R.C.2919.25 by implication. The Ohio Supreme Court has stated that "[r]epeals by implication are not favored and before a statute is so repealed the repugnancy must be necessary and obvious[.]"State ex rel. Roof v. Bd. of Commrs. of Hardin Cty. (1974),39 Ohio St.2d 130, 138.
 {¶ 17} We first examine whether R.C. 2919.25 creates or recognizes "a legal status for relationships of unmarried individuals." Section 11, Article XV does not define the term, "legal status," nor is there a definition of "legal status" in Ohio case law. The relevant definition of "status" in Webster's Third New International Dictionary is as follows: "the condition (as arising out of age, sex, mental incapacity, crime, alienage, or public station) of a person that determines the nature of his legal personality, his legal capacities, and the nature of the legal relations to the state or to other persons into which he may enter." Webster's Third New International Dictionary (1993) 2230.
 {¶ 18} Applying the above definition, we do not find that R.C. 2919.25 creates or recognizes a "legal status for relationships of unmarried individuals." The statute does not determine "the nature of the legal relations to the state or to other persons" that a cohabitant may enter, nor does it determine a cohabitant's legal capacities. The statute does not confer or take away from a cohabitant a set of legal rights. The statute's scope is very narrow; it defines the conduct that constitutes the crime of domestic violence, and sets forth categories of individuals considered potential victims under the statute. The statute classifies a cohabitant as one of many potential victims. We do not find that such classification creates a "legal status" for relationships between unmarried, cohabiting individuals.
 {¶ 19} Even if we construed R.C. 2919.25 to create or recognize a "legal status for relationships of unmarried individuals," the statute would still be constitutional because it does not "intend to approximate the design, qualities, significance, or effect of marriage." The language of the statute expresses no such intent. The statute does not permit unmarried individuals to enter into a legally binding, marriage-like relationship with each other. It does not give an unmarried individual the right to inherit from an intestate cohabitant, the right to make medical decisions on a cohabitant's behalf, the right to file a joint tax return with a cohabitant, or any other of the host of rights associated with marriage.
 {¶ 20} R.C. 2919.25 does align unmarried, cohabiting persons with married persons in the sense that individuals in both groups can be classified as offenders or victims under the statute. However, such alignment does not amount to the creation or recognition of a legal status "that intends to approximate the design, qualities, significance, or effect of marriage." The intent of the domestic violence statute is clear on its face: to protect all members of a household from domestic violence by punishing those who commit domestic violence. Consistent with that purpose, the statute protects other household members beyond spouses and cohabitants. The definition of "family or household members" under the statute includes parents, grandparents, children, aunts, uncles, cousins, and other relatives of the offender, the offender's spouse, or a person living as the offender's spouse. See R.C. 2919.25(F)(1). In enacting R.C.2919.25, the General Assembly clearly intended to address household violence in all its forms, and did not intend to create in unmarried, cohabiting individuals a legal status "approximating the design, qualities, significance, or effect of marriage."
 {¶ 21} We conclude that appellee cannot overcome the presumption of constitutionality accorded R.C. 2919.25. R.C.2919.25 and Section 11, Article XV are reconcilable. Under a fair interpretation, R.C. 2919.25 does not "create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effect of marriage." Therefore, we sustain the state's sole assignment of error and reverse the decision of the common pleas court amending the domestic violence count to assault. We remand this case to the common pleas court for further proceedings according to law and consistent with this opinion.
Young and Bressler, JJ., concur.