OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Petitioner-Appellant, Virginia Gough, appeals the decision of the Columbiana County Court of Common Pleas that granted Respondent-Appellee's, Robert Triner's, motion to dismiss Gough's petition for a domestic violence civil protection order (DVCPO). The trial court concluded that applying the statute providing for DVCPO's, R.C. 3113.31, against Triner would violate Section 11, Article XV of the Ohio Constitution, the Defense of Marriage Amendment of 2004.
 {¶ 2} At issue is the application of the Defense of Marriage Amendment to issues other than same-sex, polygamous, or bigamous marriage. After examining the language of the Amendment, the nature of the legal status of marriage, and the status conferred by R.C. 3113.31, we conclude that the Defense of Marriage Amendment does not prevent courts from issuing DVCPO's to non-married cohabitants. The legal status conferred by R.C.3113.31 does not approximate the design, qualities, significance, and effect of marriage and, therefore, the statute does not violate the Amendment. Accordingly, the trial court's decision to the contrary is reversed and this cause is remanded for further proceedings.
 Facts {¶ 3} On January 19, 2005, Gough filed a petition for a DVCPO against Triner, in which she alleged that Triner threatened to kill her in January 2005 and had performed various acts of violence against her "in the past." Gough further alleged that she and Triner were either cohabitating now or had cohabitated within five years prior to the alleged act of domestic violence. On January 27, 2005 the trial court issued an ex parte order of protection and set the matter for a full hearing the same day.
 {¶ 4} Triner moved to dismiss the petition, arguing that it would be unconstitutional to enforce a DVCPO against him. Gough filed a brief opposing the motion and each party later filed supplemental briefs. Furthermore, Gough moved for an evidentiary hearing in order to submit testimony about Triner's actions "in the past."
 {¶ 5} A magistrate addressed both Gough's motion for an evidentiary hearing and Triner's motion to dismiss. It concluded that an evidentiary hearing was unnecessary to determine Triner's motion since the parties both agreed that they had cohabited as defined by Ohio law. It then granted Triner's motion to dismiss, concluding that enforcing a DVCPO against him would violate a recent amendment to the Ohio Constitution.
 {¶ 6} Gough objected to the magistrate's decision arguing both that the magistrate erroneously denied the request for the evidentiary hearing and that the recent constitutional amendment did not affect the court's ability to enforce a domestic violence civil protection order against Triner.
 {¶ 7} The trial court overruled Gough's objections and adopted the magistrate's decision. It concluded that the DVCPO requested would create or recognize a legal status approximating the design, quality, significance, or effect of marriage since Gough and Triner were unmarried cohabitants, so it was unconstitutional. Accordingly, it dismissed Gough's petition.
 {¶ 8} After the matter was appealed, we allowed the Action Ohio Coalition of Battered Women, the Ohio Domestic Violence Network, and the Ohio NOW Education and Legal Fund to file a joint amici curiae brief.
 Applying Defense of Marriage Amendment to DVCPO's {¶ 9} In her first of two assignments of error, Gough argues:
 {¶ 10} "The trial court erred in declaring R.C. 3113.31(A)(4) unconstitutional as violative of Art. XV, Sec. 11 of the Ohio Constitution."
 {¶ 11} The issue of whether Article XV, Section 11 applies to any area of the law other than same-sex, polygamous, or bigamous marriages has been the subject of much litigation recently. For instance, the Second District has held that it is unconstitutional to convict an unmarried cohabitant of domestic violence since doing so would create a legal status approximating the design, quality, significance, or effect of marriage. Statev. Ward, 2nd Dist. No. 2005-CA-75, 2006-Ohio-1407. Other appellate districts have disagreed. Cleveland v. Voies, 8th Dist. No. 86317, 2006-Ohio-0815; State v. Nixon, 9th Dist. No. 22667, 2006-Ohio-0072; State v. Newell, 5th Dist. No. 2004CA00264, 2005-Ohio-2848; State v. Carswell, 12th Dist. No. 2005-04-047, 2005-Ohio-6547. We could not directly deal with this issue in the past due to the lack of evidence necessary to challenge whether a statute is unconstitutional as applied to a particular set of facts. State v. McCaslin, 7th Dist. No. 05 CO 44, 2006-Ohio-0891; State v. Rexroad, 7th Dist. Nos. 05 CO 36, 05 CO 52, 2005-Ohio-6790. This case provides us with the opportunity to decide this issue.
 {¶ 12} The issues raised in this case require us to interpret both the recent constitutional amendment and R.C. 3113.31. "In the interpretation of an amendment to the Constitution the object of the people in adopting it should be given effect; the polestar in the construction of constitutional, as well as legislative, provisions is the intention of the makers and adopters thereof."Castleberry v. Evatt (1946), 147 Ohio St. 30, paragraph one of the syllabus. As a general rule, courts apply the same rules of construction when construing the Constitution that they use when construing statutes in order to determine the intent of those adopting a constitutional provision. Smith v. Leis,106 Ohio St.3d 309, 2005-Ohio-5125, at ¶ 57.
 {¶ 13} "The first step in determining the meaning of a constitutional provision is to look at the language of the provision itself." State ex rel. Maurer v. Sheward,71 Ohio St.3d 513, 520, 1994-Ohio-0496. Accordingly, this court must "consider the common and ordinary meaning of the terms contained within our Constitution in order to interpret them properly."State ex rel. Lake Cty. Bd. of Commrs., v. Zupancic (1991),62 Ohio St.3d 297, 300, citing Cleveland Tel. Co. v. Cleveland
(1918), 98 Ohio St. 358, 368-369. "Words used in the Constitution that are not defined therein must be taken in their usual, normal, or customary meaning." State ex rel. Taft v. FranklinCty. Court of Common Pleas, 81 Ohio St.3d 480, 481, 1998-Ohio-0333.
 {¶ 14} When a court construes a constitutional amendment, it must presume that those adopting the amendment had in mind existing constitutional or statutory provisions and their judicial construction, touching the subject dealt with in the amendment. American Woodenware Mfg. Co. v. Schorling (1917),96 Ohio St. 305, syllabus; State ex rel. Engle v. IndustrialCommission (1944), 142 Ohio St. 425, 432. Constitutional amendments do not repeal existing statutes unless the repugnancy between the two is clear and the two are so contrary to each other that they cannot be reconciled. State ex rel. Evans v.Dudley (1853), 1 Ohio St. 437, 441. This "repeal by implication" is not favored. Id.
 {¶ 15} If the meaning of a constitutional provision is clear on its face, courts will not look beyond the provision in an attempt to divine what the drafters intended it to mean.Sheward at 520. However, when the meaning of a constitutional provision cannot be ascertained by its plain language, a court may look to the purpose of the provision to determine its meaning. State v. Jackson, 102 Ohio St.3d 380, 2004-Ohio-3206, at ¶ 14. In order to determine an ambiguous provision's purpose, courts can look to the history of the time when it was passed; the attending circumstances at the time of adoption; the cause, occasion or necessity for the provision; the imperfections to be removed or the mischief sought to be avoided; and the remedy intended to be afforded. Cleveland v. Board of Tax Appeals
(1950), 153 Ohio St. 97, 103. When divining a constitutional provision's purpose, courts cannot rely on the imprecise speeches of individual drafters to ignore the plain language of a constitutional provision. Sheward at 522. But the views of an amendment's proponents should be given more weight than those of its opponents since an amendment's opponents usually overstate its reach in their zeal to defeat it. Edward J. DeBartolo Corp.v. Florida Gulf Coast Bldg. and Const. Trades Council (1988)485 U.S. 568, 584-585. Courts should be wary of looking at this history before they conclude the constitutional provision is ambiguous. Bailey v. Republic Engineered Steels, Inc.,91 Ohio St.3d 38, 40, 2001-Ohio-0236.
 {¶ 16} The Defense of Marriage Amendment provides:
 {¶ 17} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." Article XV, Section 11 of the Ohio Constitution.
 {¶ 18} The first sentence of the Amendment clearly and unambiguously prohibits same-sex, polygamous, and bigamous marriages and has no effect on the issues involved in this case. In contrast, the language used in the Amendment's second sentence is broader. It prohibits the legal recognition of any legal status between unmarried people which approximates the design, qualities, significance or effect of marriage. We must determine whether R.C. 3113.31 creates such a status.
 {¶ 19} Outside those courts which have been dealing with this issue, no Ohio court has tried to precisely define the phrase "legal status." However, the word status has a clear definition as it is commonly used. Carswell at ¶ 17. In it's common usage, the word "status" means "the condition of a person or thing in the eyes of the law." Merriam-Webster's Collegiate Dictionary (10th Ed. 1998), 1149; see also Black's Law Dictionary (8th Ed. 2004), 1447 ("A person's legal condition"). Thus, when determining whether the domestic violence laws create or recognize a "legal status," we must determine whether it creates or recognizes a condition in the eyes of the law.
 {¶ 20} Pursuant to R.C. 3113.31, a trial court may issue a DVCPO if a petitioner can prove, by a preponderance of the evidence, that the petitioner is a family or household member of the respondent and that the petitioner is in immediate and present danger of domestic violence by the respondent. R.C.3113.31(D); Felton v. Felton, 79 Ohio St.3d 34, 43, 1997-Ohio-0302. A person is a "family or household member" if, among other things, they are "a person living as a spouse," which is defined as "a person who is living or has lived with the respondent in a common law marital relationship, who otherwise is cohabiting with the respondent, or who otherwise has cohabited with the respondent within five years prior to the date of the alleged occurrence of the act in question." R.C.3113.31(A)(3)(ii); R.C. 3113.31(A)(4).
 {¶ 21} The Revised Code does not define "cohabitation," but the Ohio Supreme Court has held that the essential elements of cohabitation for the purposes of R.C. 2919.15, the statute criminalizing domestic violence, and statutes related to it "are (1) sharing of familial or financial responsibilities and (2) consortium." State v. Williams, 79 Ohio St.3d 459, 1997-Ohio-0079, paragraph two of the syllabus. Many factors should be considered to determine whether these elements exist in a particular case. Id. at 465. "These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." Id.
 {¶ 22} R.C. 3113.31 defines "domestic violence" as attempting to cause or recklessly causing bodily injury, placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of R.C. 2903.211 or2911.211, or committing any act with respect to a child that would result in the child being an abused child, as defined in R.C. 2151.031. R.C. 3113.31(A)(1).
 {¶ 23} After reviewing these statutes and the caselaw, we conclude that R.C. 3113.31 does create or recognize a legal status. The classes of people identified in the statute are the only people who are allowed to file a petition for a DVCPO. Thus, they have a condition, the ability to obtain a DVCPO, recognized in the eyes of the law. R.C. 3113.31, therefore, creates or recognizes a legal status for unmarried individuals. However, this conclusion cannot end our analysis. We must determine whether this legal status approximates marriage. Accordingly, we will examine the design, qualities, significance, and effect of marriage.
 {¶ 24} "`Marriage' is a status created by operation of law."Langer v. Langer (1997), 123 Ohio App.3d 348, 353. It is a civil contract, of a peculiar character and subject to peculiar principles, which is designed "to perpetuate family groups within the larger social entitles [sic] of which each marital unit is a part." Vrabel v. Vrabel (1983), 9 Ohio App.3d 263, 269;Coleman v. Coleman (1972), 32 Ohio St.2d 155, 161. Marriage "`involves a personal union of those participating in it of a character unknown to any other human relation.'" In re Soeder'sEstate (1966), 7 Ohio App.2d 271, 290, quoting Parke v. Parke
(1920), 25 Haw. 397.
 {¶ 25} The law recognizes the special nature of marriage in many ways. For instance, only married couples have the right to a dower interest, R.C. 2103.02; the right to consortium, Andersonv. Brush-Wellman, Inc. (1991), 77 Ohio App.3d 657, 662; the right to spousal support, R.C. 3105.18; intestate succession preferences, R.C. 2105.06; testimonial privileges, 2317.02(D); and testamentary property rights, such as electing to take against the will. R.C. 2106.01. In addition, spouses enjoy pension benefits, immigration preferences, tax preferences, health insurance, and conjugal visits. McIntosh at 3, citing Sowald Morganstern, Domestic Relations Law (2002), Sec. 2:1.
 {¶ 26} In the eyes of the law, marriage is a special status which confers many rights and benefits upon the parties to a marriage. R.C. 3113.31 gives unmarried couples the ability to receive a DVCPO. This legal status falls far short of the legal status accorded to marriage. Thus, R.C. 3113.31 does not violate the plain language of Article XV, Section 11 because the legal status it creates does not approximate the design, qualities, significance, or effect of marriage.
 {¶ 27} This conclusion is supported by various rules of constitutional construction. For instance, the Amendment did not explicitly state that it would do more than prohibit same-sex, polygamous, and bigamous marriages. Since repeal by implication is not favored and any tension between the two can be reconciled by the interpretation described above, courts should not interpret the Amendment in such a way as to invalidate the statute. Dudley at 441. Similarly, the Amendment's proponents consistently stated that they did not believe that the Amendment would affect anything other than same-sex, polygamous, and bigamous marriages. Edward J. DeBartolo Corp. at 584-585.
 {¶ 28} The trial court erred when it dismissed Gough's petition for a DVCPO. Gough's first assignment of error is meritorious.
 {¶ 29} In her second assignment of error, Gough argues:
 {¶ 30} "The trial court erred in dismissing Plaintiff-Appellant's petition for a civil protection order prior to a hearing on the merits."
 {¶ 31} Because we have concluded that the trial court erred in dismissing Gough's petition for a DVCPO, it does not matter whether the trial court held a hearing prior to taking that action. Accordingly, our resolution of Gough's first assignment of error has rendered this assignment of error moot.
 Conclusion {¶ 32} In conclusion, the trial court erred when it found that R.C. 3113.31 was unconstitutional when applied to unmarried cohabitants. Article XV, Section 11 of the Ohio Constitution prevents any statute from creating or recognizing a legal status for unmarried individuals which approximates the design, qualities, significance or effect of marriage. R.C. 3113.31
creates a legal status for unmarried individuals, since it allows them to be part of the class of people who can petition for a DVCPO. However, that legal status does not approximate the design, qualities, significance, or effect of marriage. Accordingly, the judgment of the trial court is reversed and this cause is remanded for further proceedings.
Donofrio, P.J., concurs.
Waite, J., concurs.