DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Albert Rodriguez, appeals the judgment of the Norwalk Municipal Court, which convicted him of domestic violence, a misdemeanor of the first degree. At his trial, appellant did not dispute that he pushed the victim, a woman to whom he was not married, but with whom he had been cohabitating; appellant only contested the issue of his intent and the extent of the physical altercation. On August 23, 2005, appellant was sentenced to 180 days incarceration (120 days suspended), five years of probation, and a $500 fine plus costs.
 {¶ 2} Appellant now challenges his conviction by challenging the constitutionality of R.C. 2919.25(F)(1) through the following assignment of error:
 {¶ 3} "Appellant was erroneously convicted under an unconstitutional law, as the Ohio Domestic Violence statute unconstitutionally conferrs [sic] special legal status [sic] to unmarried individuals, who, merely by virtue of `living as a spouse' with the alleged victim, are subject to the punishment of O.R.C. 2919.25."
 {¶ 4} Appellant also asserts two issues coincident with the claimed error:
 {¶ 5} "I. Whether the definition of `person living as spouse' as set forth in O.R.C. 2919.25 approximates the design, qualities, significance or effect of marriage.
 {¶ 6} "II. Whether unmarried people who are or have been cohabitating, or living as spouses, as set forth in O.R.C.2919.25 are afforded a legal status, in violation of Article XV, Section 11 of the Ohio Constitution."
 {¶ 7} Appellant neither filed a motion to dismiss supported by these arguments, nor did he raise these arguments below during any proceedings. As a preliminary matter, then, we address whether appellant has waived the right to assert the issue on appeal. Appellee argues that this issue should not be addressed for the first time on appeal, since Section 11, Article XV, Ohio Constitution (the "Marriage Amendment"), became effective December 2, 2004, well before appellant's trial.
 {¶ 8} Currently, eight appellate districts in Ohio have ruled upon this exact issue. As of the date of appellant's trial, only one appellate district and eight courts of common pleas had considered the issue. As of the time the appellate briefs were filed in this matter, four other appellate courts have issued decisions; since the briefs have been filed, three more appellate districts have issued their decisions. The Ohio Supreme Court has just accepted two identical cases for discretionary review. Thus, it is unlikely that appellant was aware of the argument's availability. As our decision will, of necessity, conflict with another appellate district, review is not improper as this case should be certified to the Ohio Supreme Court for review.
 {¶ 9} Even though an appellant's failure to raise an issue in the trial court generally constitutes a waiver of the issue,State v. Awan (1986), 22 Ohio St.3d 120, 122, reviewing courts have discretionary power to review issues regardless of whether they were raised below. Brown v. Borchers Ford, Inc. (1977),50 Ohio St.2d 38, 39. Appellee has correctly noted that courts should not exercise their discretion to examine a claim that existed prior to or at the time of trial. Awan, supra, citingState v. Woodards (1966), 6 Ohio St.2d 14, 21. Nevertheless, the issues raised in this appeal are timely and developing rapidly. Additionally, this matter should be certified to the Ohio Supreme Court pursuant to Section 3(B)(4), Article IV, Ohio Constitution, pending the court's final determination of the issues.
 {¶ 10} Upon consideration of the eight appellate decisions, we find that we cannot wholly adopt any of the legal reasoning employed to date. The Fifth, Eighth, and Ninth districts have held that the statute is constitutional by applying only the history of the Marriage Amendment, rather than its plain language. State v. Newell, 5th Dist. No. 2004-CA-00264,2005-Ohio-2848; State v. Burk (2005), 164 Ohio App.3d 740,2005-Ohio-6727; State v. Nixon (2006), 165 Ohio App.3d 178,2006-Ohio-72. The Tenth and Twelfth Districts have found that R.C. 2919.25 does not violate the plain language of the Marriage Amendment. State v. Rogers, 10th Dist. No. 05AP-446,2006-Ohio-1528; State v. Carswell, 12th Dist. No. CA2005-04-047, 2005-Ohio-6547. The Second and Third Districts determined that the plain language of the Marriage Amendment makes R.C. 2919.25 unconstitutional as applied to cohabitants.State v. Ward, 2d Dist. No. 2005-CA-75, 2006-Ohio-1407; Statev. McKinley, 3d Dist. No. 8-05-14, 2006-Ohio-2507.[1]
 {¶ 11} Appellant faces a substantial hurdle of persuasion. Any claim that a statute is unconstitutional must be proven beyond a reasonable doubt by the complaining party. In reColumbus Skyline Securities, Inc. (1996), 74 Ohio St.3d 495. Further, legislative enactments enjoy a "strong presumption" of constitutionality, and the legislation and the constitutional provision must be "clearly incompatible." State ex rel. Jackmanv. Court of Common Pleas of Cuyahoga County (1967),9 Ohio St.2d 159, 224 N.E.2d 906, 909, citing American Cancer Society, Inc.,v. Dayton (1953), 160 Ohio St. 114, 121; State ex rel. Dickmanv. Defenbacher, Dir. (1955), 164 Ohio St. 142, syllabus.
 {¶ 12} Instead of challenging the statute on its face, appellant argues that the domestic violence statute was unconstitutional as applied to him, since he could not have been convicted of domestic violence had the court not factually determined that he and his victim were members of the same "household" and "living as spouses." Appellant and appellee both agree that appellant and his victim were "person(s) living as a spouse" as required for criminal liability pursuant to R.C.2919.25(F). Appellant and his victim were not married, but "engaged in sexual relations," were living together in a home and were "setting it up as a family." Appellant challenges his conviction upon the grounds that such a classification violates the Marriage Amendment's prohibition against any legal status for "relationships of unmarried individuals that intends to approximate" marriage. The amendment provides:
 {¶ 13} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." Section 11, Article XV, Ohio Constitution.
 {¶ 14} The editor's notes to the Marriage Amendment comment that the amendment was proposed to foreclose the possibility that R.C. 3101.01, defining marriage as limited to "an institution to be entered by men with women and women with men," would be judicially held to violate the equal protection guarantees of the Ohio Constitution. The Massachusetts Supreme Court so held inGoodrich v. Dept. of Public Health (2003), 440 Mass. 309. See, also, McKinley, 2006-Ohio-2507 at ¶ 12. "[T]he Defense of Marriage amendment was proposed, and adopted, amidst concerns that the concept of traditional marriage was being eroded by judicial rulings, among other factors." Ward, 2006-Ohio-1407, at ¶ 27.
 {¶ 15} In any case, courts must look to the plain language of a constitutional amendment to ascertain intent. Appellant's argument centers on the Marriage Amendment's language dictating that Ohio "shall not create or recognize a legal status" that approximates marriage, and points to the domestic violence statute's inclusion of "persons living as a spouse" in the class of victims. At bottom, appellant argues that — irrespective of sex or gender — two persons living as spouses enjoy a relationship approximating marriage and that, by recognizing that relationship, the statute contravenes the amendment.
 {¶ 16} R.C. 2919.25 classifies those relationships which, when physical abuse occurs between parties to the relationship, give rise to domestic violence charges, rather than assault charges. The statute provides that no person shall "knowingly" or "recklessly" cause harm to a "family or household member." R.C.2919.25(A), (B), (C). A "family or household member" is defined as "any of the following who is residing or has resided with the offender:
 {¶ 17} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 18} "* * *
 {¶ 19} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender." R.C.2919.25(F)(1)(a).
 {¶ 20} The Second and Third Appellate Districts have held that R.C. 2919.25 recognizes a "legal status" approximating marriage in contravention of the amendment's prohibition.McKinley, 2006-Ohio-2507; Ward, 2006-Ohio-1407. The majority of appellate courts, however, have found that R.C. 2919.25
recognizes no legal status. Nixon, at ¶ 13 (the phrase "person living as a spouse" is "merely `descriptive' of those individuals entitled to protection from criminal activity under the statute and does not serve to create a legal status for relationship of unmarried individuals that approximates marriage."); Newell, at ¶ 43 ("criminal statutes do not create rights; they merely [prohibit] certain conduct."); Burk, at ¶ 20 ("the legislature * * * did not intend `to bestow upon unmarried individuals, or to recognize in them, a legal status that approximates * * * marriage."); Rodgers, at ¶ 15 (the statute "does not create a legal status for relationships of unmarried individuals that approximates marriage."); Carswell, at ¶ 19 ("The statute does not confer or take away from a cohabitant a set of legal rights.")
 {¶ 21} Generally, a "status" is "the condition of a person or thing in the eyes of the law." Merriam Webster Collegiate Dictionary (10th Ed. 1996). Black's Law Dictionary (8th Ed. Rev. 2004) defines "status" as "a person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities, and other legal relations, or any particular group of them separately considered the status of a landowner."
 {¶ 22} According to these definitions, appellant argues, any time the state alters the legal rights or liabilities of a person, the state has conferred a "legal status" upon the person. Following this reasoning, the majority in McKinley held that R.C. 2919.25 recognizes a legal status because it confers upon a class of individuals — persons cohabiting with the offender — specified rights. McKinley's concurrence posited that the statute recognizes a legal status because it imposes additional liabilities upon offenders by virtue of the classification of their relationship with the victim.[2] Indeed, we agree that, of the courts to address the issue, McKinley's analysis, focusing upon the plain language of both R.C. 2919.25 and the amendment, is the most sound.
 {¶ 23} R.C. 2919.25 clarifies and defines a "person living as a spouse" as: "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." A victim's status as a "family or household member" is an element of the offense. Statev. Hannon, 4th Dist. No. 04CA20, 2005-Ohio-874. In order to prove that a victim and the offender are "cohabitating," and thus prove that the victim is a "person living as a spouse," the state must demonstrate that the relationship between the victim and the offender is as stated in State v. Williams:
 {¶ 24} "[T]he essential elements of `cohabitation' are (1) sharing of familial or financial responsibilities and (2) consortium. R.C. 2919.25(E)(2) and related statutes. Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." State v. Williams, 79 Ohio St.3d at 465.
 {¶ 25} When applying the above elements to the circumstances constituting the victim/offender relationship, courts "should be guided by common sense and ordinary human experience." State v.Rinehart, 4th Dist. No. 01CA2620, 2002-Ohio-6143, ¶ 27, citingState v. Colter (Mar. 17, 2000), 2d Dist. No. 17828. Applying the Williams factors, Rinehart found the offender did not "cohabitate" with the victim where, inter alia, he only occasionally slept nights at the victim's home; he was only allowed in the victim's home when the victim was present; and where the offender kept no possessions at the victim's home. 2002-Ohio-6143 at ¶ 29. Without further evidence of sharing "familial or financial responsibilities," the relationship did not constitute "cohabitation" although such facts are "often found in dating relationships." Id. at ¶ 31. See, also, State v.Humbarger, 3d Dist. No. 15-01-18, 2002-Ohio-4160 (a three-day temporary stay at victim's residence does not constitute "cohabitation").
 {¶ 26} The analytical flaw of McKinley and Ward is in the examination of whether the relationship of cohabitation — rather than the legal status afforded to cohabitants — approximates marriage. That is, a proper analysis should be performed in two parts: First, what rights and liabilities attach to the relationship by virtue of the statute; second, do thoserights and liabilities imposed upon the parties by the statute approximate marriage?
 {¶ 27} Of course, if one examines only the set of factual conditions necessary or sufficient to constitute a relationship of "cohabitation," then one can easily conclude that the resulting classification "approximates" marriage. However, the Marriage Amendment only prohibits and proscribes the state of Ohio from creating or recognizing any "legal status" that approximates marriage for a factual classification; the Marriage Amendment does not prohibit the existence of cohabitative relationships.
 {¶ 28} In the domestic violence statute, the classification of the relationship precedes the recognition of a legal status: The statute first defines cohabitants, then it creates a legal status for members of that class. Examining the plain language of the Marriage Amendment, the phrase "intends to approximate the design, qualities, significance or effect of marriage" modifies "legal status," not "relationships of unmarried individuals." Hence, the legal status cannot approximate the design of marriage and not the relationship; otherwise, the number agreement between "relationships" and "intends" does not correspond.
 {¶ 29} Judge Karpinski, dissenting in State v. Douglas, 8th Dist. Nos. 86567, 86568, 2006-Ohio-2343, most closely recognized the distinction which must be made when considering the effect of the Marriage Amendment upon a statute, though her conclusion, in our opinion, is erroneous. First, following Williams, she recognizes that the "sharing of familial or financial responsibilities and consortium" have been recognized by society as a relationship possessing the "design, qualities, significance or effect of marriage." Id. at ¶ 23. With this, it is difficult to disagree. However, the point is merely descriptive of a set of factual circumstances shared by both legally married couples and cohabitating couples, regardless of sex or gender.
 {¶ 30} She continues, "When two unmarried people are deemed cohabitants under the domestic violence statute, they attain a legal status: each may prosecute the other person for an act of violence under the statute. It is a crime quite different from a general assault, precisely because of the special intimacy of the parties." Id. at ¶ 24. We also agree: R.C. 2919.25 affords such legal status to victims of violent acts and the perpetrators of those acts; it imposes certain rights upon victims who cohabitate with the offender simply by virtue of cohabitation and it imposes additional liabilities upon offenders who perpetrate violent acts upon their cohabitant. However, it is not simply the existence ofany legal status the Marriage Amendment prohibits; the plain language of the amendment's second sentence only prohibits — without respect to sex or gender — the state from granting alegal status which approximates marriage.
 {¶ 31} Instead of completing the analysis required by the amendment, she concludes that R.C. 2919.25 is unconstitutional because it imposes rights and liabilities — a legal status — upon cohabitants. The logical leap fails to consider whether the legal status imposed — the right to prosecute acts of violence and the attendant criminal liability — was intended to approximate the "design qualities, significance or effect of marriage." In other words, does the statute's imposition of additional sanctions for acts of violence resemble the rights and liabilities of marriage?
 {¶ 32} We hold that it does not. Although R.C. 2919.25
confers rights and liabilities upon a class of relationships which resemble marriage, it might also be said that the word "marriage" is nothing more than a factual classification that creates no legal status. A statute creates or recognizes a legal status when it alters or recognizes the relationship between an individual and the state. It may be possible for two persons to be "married" within the eyes of or by a religious institution but have no legal status conferred upon them — perhaps because they chose not to have their marriage bound in the eyes of the law. When a person enters into the legal status of marriage, a host of legal rights and liabilities are conferred upon them, for example, the legal duty to "support person's self and spouse out of the person's property or by the person's labor." R.C.3103.03(A).
 {¶ 33} Both Ward and McKinley confuse the elements ofWilliams' "cohabitant" test to refer to a cohabitant's legal status rather than a cohabitant's factual classification. Merely recognizing that, in life, cohabitants provide consortium and financial support to each other does not bind them with a legal duty to do so, as does marriage. The flawed reasoning is also apparent in Logsdon, when the court states: "Webster's New Collegiate Dictionary defines `cohabit' as `to live together as or as if as husband and wife.' Webster's New Collegiate Dictionary 257 (1986 9th Ed.). Thus, the requirement that unmarried individuals must cohabit in order to obtain protection under R.C. 2919.25(A) recognizes a legal status that intends to approximate the significance or effect of marriage."2006-Ohio-2938, at ¶ 25. Although the circumstances attending cohabitation may resemble marriage, the protection granted by R.C. 2919.25 is only the recognition that people do, in fact, live together as if they were married, and sadly, commit violence upon each other, and thus require special attention. See Statev. Williams, 79 Ohio St.3d at 463.
 {¶ 34} The domestic violence statute's imposition of legal rights and liabilities neither intends to "approximate marriage" nor does that legal status approximate marriage in fact. BecauseWard and McKinley incorrectly focused upon whether therelationship of cohabitants approximates marriage, there has been little discussion of whether criminal liability for committing violence against a cohabitant resembles "marriage."
 {¶ 35} While the Third District noted that the Constitution of Ohio must be enforced despite "adverse ramifications and unexpected or unintentional consequences to the public," and that, under their decision, heterosexual cohabitants are protected by assault and other "appropriate" charges, McKinley,
at ¶ 32, we are compelled to note the inverse: By upholding appellant's conviction, the domestic violence statute should and must be enforced against "cohabitants" regardless of sexual orientation or gender. The domestic violence statute makes no distinction with respect to the sexual relationship underlying that legal status, and neither should the enforcement systems of this state. See State v. Hadinger (1991), 61 Ohio App.3d 820,823 ("[T]he legislature intended that the domestic violence statute provide protection to persons who are cohabiting regardless of their sex. We believe that to read the domestic violence statute otherwise would eviscerate the efforts of the legislature to safeguard, regardless of gender, the rights of victims of domestic violence. * * * R.C. 2919.25(E)(2) defining a `person living as a spouse' as a person `who otherwise is cohabiting with the offender' does not in and of itself exclude two persons of the same sex."); State v. Yaden (1997),118 Ohio App.3d 410, 416 ("It is true that same-sex couples are not permitted to be `spouses' of each other. But the definition of `living as a spouse' includes a larger segment of couples-not only `spouses' but also `cohabitors.' Opposite-sex couples who `cohabit' are protected. We can see no tangible benefit to withholding this statutory protection from same-sex couples.")
 {¶ 36} For the foregoing reasons, appellant's assignment of error is not well taken, and the judgment of the Norwalk Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
 {¶ 37} "Whenever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination." Section 3(B)(4), Article IV, Ohio Constitution. Because our decision is in conflict with the Third District's decision inState v. McKinley, 3d Dist. No. 8-05-14, 2006-Ohio-2507, and the Second District's decision in State v. Ward, 2d Dist. No. 2005-CA-75, 2006-Ohio-1407, we certify the record of this case to the Ohio Supreme Court for review and final determination of whether Section 11, Article XV, Ohio Constitution, renders R.C.2919.25 unconstitutional as applied to a "person living as a spouse."
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., William J. Skow, J., Dennis M. Parish, J., concur.
[1] Also decided on this issue:
Holding R.C. 2919.25 unconstitutional: State v. Davis, 2d Dist. No., 2006-Ohio-2633; State v. Robinson, 2d Dist. No.,2006-Ohio-2650; State v. Maddox, 2d Dist. No. 2006-Ohio-2127;State v. Peterson, 2d Dist. No., 2006-Ohio-1816; State v.Woullard, 2d Dist. No., 2006-Ohio-1804; State v. Steineman, 2d Dist. No., 2006-Ohio-1818; State v. Hill, 2d Dist. No.,2006-Ohio-1811; State v. McIntosh, 2d Dist. No.,2006-Ohio-1815; State v. Dixon, 2d Dist. No., 2006-Ohio-1584;State v. Phillips, 2d Dist. No., 2006-Ohio-1607; State v.Pelfrey, 2d Dist. No., 2006-Ohio-1605; State v. Logsdon, 3d Dist. No., 2006-Ohio-2938; State v. Schaffer, 3d Dist. No., 2006-Ohio-2662; Holding R.C. 2919.25 constitutional: Statev. Goshorn, 4th Dist. No., 2006-Ohio-2755; State v. Edwards,
5th Dist. No. 2005CA00129, 2005-Ohio-7064; State v. Brown
(2006), ___ N.E.2d ___, 2006-Ohio-1181; Uhrichsville v. Losey,
5th Dist. No. 2005AP030028, 2005-Ohio-6564; State v. Adams, 5th Dist. No. 2005CA00103, 2005-Ohio-6333; State v. McCaslin, 7th Dist. No. 05CO44, 2006-Ohio-891; State v. Douglas, 8th Dist. No., 2006-Ohio-2343; Cleveland v. Voies, 8th Dist. No. 86317,2006-Ohio-815; State v. Rodgers (2006), ___ N.E.2d ___,2006-Ohio-1528.
[2] In McKinley, the court counseled that cohabitants are not left unprotected by the ruling, since assault charges or "other appropriate charges" could be filed against offenders.2006-Ohio-2507, at ¶ 32. However, "the General Assembly believed that an assault involving a family or household member deserves further protection than an assault on a stranger." State v.Williams (1997), 79 Ohio St.3d 459, 463.