OPINION
{¶ 1} Appellant, Jason Jenson, appeals the judgment of the Willoughby Municipal Court, convicting him of domestic violence, a misdemeanor of the first degree in violation of R.C.2919.25(A). At issue is whether the provision in the domestic violence statute, R.C. 2919.25(F)(1)(a)(i), extending the protections of that criminal statute to "a person living as a spouse" offends the Defense of Marriage Amendment to the Ohio Constitution (also "Issue 1") to the extent it creates or recognizes "a legal status for relationships of unmarried individuals that intends to approximate the * * * effect of marriage." For the reasons that follow, we conclude it does not.
 {¶ 2} The following facts are undisputed: On May 14, 2005, appellant and his girlfriend, Tanya Flick, were involved in a physical altercation. Appellant and Flick shared a home and were involved in a romantic relationship; however, at the time of the incident, the couple was unmarried.
 {¶ 3} On May 16, 2005, appellant was charged with domestic violence in violation of R.C. 2919.25(A). Appellant entered a plea of "not guilty" to the charge. On June 2, 2005, appellant filed a motion to dismiss the charge arguing R.C. 2919.25 was unconstitutional as applied to his situation. After a hearing on the motion, the trial court denied appellant's motion. Subsequently, appellant withdrew his "not guilty" plea and entered a plea of "no contest." The trial court found appellant "guilty" and sentenced appellant to ninety days in jail with sixty days suspended. Appellant's sentence was stayed pending the outcome of the instant appeal. Appellant now assigns the following error for our consideration:
 {¶ 4} "The trial court erred when it denied the defendant-appellant's motion to dismiss and found R.C. 2919.25, when applied to unmarried persons who live as spouses, constitutional."
 {¶ 5} The constitutionality of a statute is a matter of law which an appellate court reviews de novo. Akron v. Callaway,162 Ohio App.3d 781, 2005-Ohio-4095, at ¶ 23. Under this standard, this court conducts an independent review, giving no deference to the trial court's determination. State v. Thymes,
9th Dist. No. 22480, 2005-Ohio-5505, at ¶ 22. Further, we bear in mind that legislative enactments enjoy a presumption of constitutionality. Johns v. Univ. of Cincinnati Med. Assoc.,Inc., 101 Ohio St.3d 234, 2004-Ohio-824, at ¶ 34. This means that courts must avoid an unconstitutional construction where it is reasonably possible to do so. United Air Lines v.Porterfield (1971), 28 Ohio St.2d 97, 100.
 {¶ 6} Appellant's sole assignment of error challenges the constitutionality of R.C. 2919.25 as it is applied to the facts of his case. When a party mounts an "as applied" challenge, he or she must present clear and convincing evidence of a presently existing set of facts rendering the statute unconstitutional and void when applied to those facts. Harrold v. Collier,107 Ohio St.3d 44, 2005-Ohio-5334, at ¶ 38. Before examining the facts of the instant case, we shall set forth the alleged incompatible provisions. The Defense of Marriage Amendment provides:
 {¶ 7} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." Section 11, Article XV, Ohio Constitution.[1]
 {¶ 8} The amendment, by its plain language, prohibits the state from granting a legal status, irrespective of gender, to unmarried persons where that status intends to approximate marriage.
 {¶ 9} R.C. 2919.25 provides, in relevant part:
 {¶ 10} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 11} "* * *
 {¶ 12} "(F) As used in this section and [R.C] 2919.251 and 2919.26 * * *:
 {¶ 13} "(1) `Family or household member' means any of the following:
 {¶ 14} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 15} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 16} "* * *
 {¶ 17} "(2) `Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." (Emphasis added)
 {¶ 18} A victim's status as a "family or household member" is an element of the offense of domestic violence. State v.Hannon, 4th Dist. No. 04CA20, 2005-Ohio-874, at ¶ 8. One way to prove the offender and victim are "family" or "household members" is through evidence that they are living together as spouses, i.e., "cohabitating." The essential elements of "cohabitation" were delineated by the Supreme Court of Ohio in State v.Williams, 79 Ohio St.3d 459, 1997-Ohio-79. In Williams, the court stated parties are "cohabiting" when they (1) share familial or financial responsibilities and (2) consortium. Id. at 465.
 {¶ 19} "Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aide of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight if any to give each of these factors must be decided on a case-by-case basis by the trier of fact." Id.
 {¶ 20} In appellant's view, the Defense of Marriage Amendment proscribes any state action which creates or recognizes "a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." Appellant maintains that the portion of R.C. 2919.25
which permits the state to prosecute those "living as a spouse" provides "special treatment" for those who are "living as a spouse" and thus is an unconstitutional recognition of a legal status for a relationship of unmarried individuals. In appellant's view, such a classification violates the Defense of Marriage Amendment's prohibition against the creation of any legal status for relationships of unmarried individuals that intends to approximate marriage.
 {¶ 21} Many appellate jurisdictions have considered this argument or one in pari materia and, not surprisingly, the legal determinations vary. We first point out that appellant's argument has garnered some support. The Second and Third Appellate Districts have held that R.C. 2919.25 is unconstitutional as applied to cohabitants because it recognizes a "legal status" approximating marriage in violation of the prohibitions set forth in the amendment. See, e.g., State v. Ward,166 Ohio App.3d 188, 2006-Ohio-1407; see, also, State v. McKinley, 3d Dist. No. 8-05-14, 2006-Ohio-2507.
 {¶ 22} Alternatively, the majority of appellate districts have determined that Issue 1 and R.C. 2919.25 can coexist. Specifically, the Fourth, Fifth, Eighth, Ninth, Tenth, and Twelfth Districts have held the statute and amendment may stand because the statute does not create a "legal status" and, in any event, the intent, history, and language of the amendment do not conflict with that of the statute. See, State v. Goshorn, 4th Dist. No. 05CA2879, 2006-Ohio-2755; State v. Edwards, 5th Dist. No. 2005CA00129, 2005-Ohio-7064; Cleveland v. Voies, 8th Dist. No. 86317, 2006-Ohio-815; State v. Nixon, 165 Ohio App.3d 178,2006-Ohio-72; State v. Rodgers, 166 Ohio App.3d 218,2006-Ohio-1528; State v. Carswell, 12th Dist. No. CA2005-04-047, 2005-Ohio-6547. Alternatively, the Sixth Appellate District has held the statute constitutional because, even though it creates a legal status, that status cannot be said to approximate marriage. State v. Rodriguez, 6th Dist. No. H-05-020, 2006-Ohio-3378.[2] Based upon our review of the foregoing, we hold that the analysis and conclusions of the Sixth Appellate District in Rodriguez are sound and persuasive.
 {¶ 23} In Rodriguez, the court observed:
 {¶ 24} "a `status' is `the condition of a person or thing in the eyes of the law.' Merriam Webster Collegiate Dictionary (10th Ed. 1996). Black's Law Dictionary (8th Ed. Rev. 2004) defines `status' as `a person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities, and other legal relations, or any particular group of them separately considered * * *.'" Id. at ¶ 21.
 {¶ 25} In light of these definitions, the Sixth District agreed with the Second and Third Appellate Districts' respective determinations that R.C. 2919.25 does recognize a "legal status" because it confers upon a class of individuals — viz., cohabitants — specified, unique rights and liabilities.Rodriguez, at ¶ 22; see, also, McKinley, supra; Ward,
supra. However, in McKinley and Ward, the courts limited their examination to whether the "relationship of cohabitation — rather than the legal status afforded to cohabitants — approximates marriage." Rodriguez, supra, at ¶ 26. Although R.C. 2919.25 imposes a legal status upon cohabitants, this conclusion fails to answer whether that legal status was intended to "approximate the design, qualities, significance or effect of marriage."
 {¶ 26} In light of this, the Sixth Appellate District has tersely remarked:
 {¶ 27} "* * * [A] proper analysis should be performed in two parts: First, what rights and liabilities attach to the relationship by virtue of the statute; second, do those rightsand liabilities imposed upon the parties by statute approximate marriage?" Rodriguez, supra, at ¶ 26. (Emphasis sic.)
 {¶ 28} With respect to the first prong, appellant's plea of no contest functioned to admit the elements of the crime of domestic violence. Hence, as a matter of procedure, it is undisputed that appellant was "living as a spouse," i.e., appellant and the victim were cohabitants. Where two unmarried persons are cohabitants under the domestic violence statute, they inherit specific rights and liabilities, viz., each cohabitant may file a complaint to prosecute the other person for an act of violence under R.C. 2919.25. See, State v. Douglas, 8th Dist. Nos. 86567 and 86568, 2006-Ohio-2343, at ¶ 24 (Dissenting Opinion). Thus, like the courts in Rodriguez, McKinley andWard, we believe R.C. 2919.25 recognizes a specific legal status for unmarried cohabitants: It confers certain rights upon victims simply by virtue of their cohabitation with the offender and imposes liabilities upon offenders who engage in violent behavior against their cohabitants.[3]
 {¶ 29} We must next determine whether the legal status imposed, i.e., the right to prosecute acts of violence and the resulting augmented criminal liability, was intended to approximate the design qualities, significance or effect of marriage. We hold it does not. In order to make this determination, we must examine the intent motivating the enactment of the statute and the drafting of the amendment.
 {¶ 30} The rights and liabilities established by R.C. 2919.25
were designed to hold accountable those who perpetrate violence against related persons as provided by the statute, or those cohabiting with the perpetrator as set forth in R.C.2919.25(F)(2). Williams, supra, 462. Ohio's domestic violence statute encompasses many relationships and gender distinctions are of no moment. R.C. 2919.25(F)(1)(a)(ii) and (iii); see, also,State v. Yaden (1997), 118 Ohio App.3d 410, 414-415. To read the statue otherwise would "eviscerate the efforts of the legislature to safeguard, regardless of gender, the rights of victims of domestic violence." State v. Hadinger (1991),61 Ohio App.3d 820, 823. Because the legislature's specific intent in enacting R.C. 2919.25 was protection of complainants in a domestic violence case (in particular, cohabitants), we believe the rights and liabilities conferred by the statute were not designed in any necessary way to approximate the union of marriage.
 {¶ 31} R.C. 2919.25 confers particular rights and imposes somewhat narrow liabilities. To be sure, these rights and liabilities are possessed by cohabiting married couples via R.C.2919.25. However, one cannot reasonably conclude that the protections of the statute sufficiently summarize or were intended to approximate the multiform rights and duties incurred through the legal union of marriage.[4] As the Eighth Appellate District has observed:
 {¶ 32} "[through R.C. 2919.25,] the legislature `merely acknowledged the reality that, either with or without official approval, human beings in Ohio will come together in a variety of loving relationships that will sometimes turn violent. Ohio's domestic violence laws assure that all of its citizens who require the special protections that the circumstances of domestic violence create will have access to the resources of their government to enhance their safety. This assurance can be, and has been, made, even to unmarried couples, without the extension of the status or benefits of marriage.'" Burk, supra, at 744, quoting Cleveland v. Knipp (Mar. 10, 2005), Cuyahoga Cty. M.C. No. 2004 CRB 039103, 2005 WL 1017629; see, also, Statev. Goshorn, 4th Dist. No. 05CA2879, 2006-Ohio-2755, at ¶ 6.
 {¶ 33} Alternatively, the Defense of Marriage Amendment "seeks to preclude the creation and recognition of any relationship `approximating the design, qualities, significance, or effect of marriage' between two persons, that would essentially infringe on the significance and effect of the institution of marriage itself." Nixon, supra, at 14, quoting Section 11, Article XV, Ohio Constitution. In our view, "living as a spouse" under R.C. 2919.25, while nominally involving a relationship which might be factually comparable to marriage, was not enacted with an intent to approximate a de jure marriage nor does the legal status it affords approximate marriage in fact.Rodriguez, supra, at ¶ 34. Appellant's sole assignment of error is without merit.
 {¶ 34} For the foregoing reasons, appellant's sole assignment of error is overruled and the judgment of the Willoughby Municipal Court is affirmed.
O'Toole, J., concurs, Grendell, J., concurs in judgment only.
[1] The Editor's Comment to the Defense of Marriage Amendment indicates its proposal was a result of concerns that courtscould make the judicial determination that R.C. 3101.01, the statutory provision defining marriage as a union entered into by one man and one woman, stands in violation of the equal protection clause of Ohio's Constitution.
[2] The Seventh Appellate District has partially weighed in on this issue as well. In State v. McCaslin, 7th Dist. No. 05CO44,2006-Ohio-891, the court declared the statute facially constitutional. However, stated it was unable to rule on the matter "as applied" to the appellant because the trial court dismissed the case prior to holding an evidentiary hearing.
[3] It is worth noting that the Eighth Appellate District has concluded "cohabitation" is a factual relationship between people and "`therefore not a legal status, let alone a legal status that "intends to approximate the design, qualities, significance or effect of marriage" within the meaning of [Issue 1].'" State v.Burk, 164 Ohio App.3d 740, 745, 2006-Ohio-6727, quoting, Statev. Rodgers, 131 Ohio Misc.2d 1, 2005-Ohio-1730. While we agree that one's status as a cohabitant is fact driven, once one is deemed a "cohabitant" for purposes of R.C. 2919.25, he or she inherits certain rights and liabilities. In effect, the fact based analysis required to make a determination regarding "cohabitation" does not preclude a cohabitant from retaining a legal status. Thus, we reject the analysis of Burk.
[4] For instance, the duty to support one's spouse, financially and via consortium, and concomitant right to receive such support from one's spouse embodies some of the general duties and rights possessed by those who enjoy the legal status of marriage. See, e.g., R.C. 3103.03(A). However, "[m]erely recognizing that, in life, cohabitants provide consortium and financial support to each other does not bind them with a legal duty to do so, as does marriage." Rodriguez, supra, at ¶ 33.